33 N.J. Super. 575 (1955)
111 A.2d 425
ELEANOR KUZMIAK AND JOSEPH KUZMIAK, PLAINTIFFS-APPELLANTS,
v.
BROOKCHESTER, INC., SECTION FOUR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1954.
Decided January 12, 1955.
*578 Before Judges GOLDMANN, FREUND and SCHETTINO.
Mr. Michael J. Monaghan, Jr., argued the cause for the plaintiffs-appellants (Messrs. Monaghan & Monaghan, attorneys).
Mr. Arthur A. Sullivan argued the cause for the defendant-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiffs, husband and wife, are tenants in an apartment building under a written lease with the defendant builder and landlord. They brought this suit to recover damages for personal injuries suffered by the wife when she fell down a stairway in the apartment building, due, according to the complaint, to the "negligent construction and maintenance by defendant of the top step of the stairway in the building, and the maintenance by defendant of a nuisance in connection with the stairway." In its answer the defendant set up as an affirmative defense a provision in the lease exculpating it from any liability. Before trial the defendant moved for dismissal of the plaintiffs' complaint. The court granted the motion and "ordered that the complaint be dismissed by reason of the provisions of said lease which exculpates the defendant from any liability for injuries to the tenant resulting from the use of said premises." From the summary judgment entered, the plaintiffs appeal.
The record on appeal consists of an agreed statement in lieu of record, without the pleadings. It does not set forth any facts particularizing the allegation  actually the conclusion  of negligence and nuisance. There are no details before us from which we can in fact determine whether the *579 fall resulted from nonfeasance, active wrongdoing or nuisance. However, by reason of the defendant's motion for summary judgment, we do assume for the purposes of this proceeding the truth of the plaintiffs' allegations.
The exculpatory clause, paragraph 20 of the lease, consists of three sentences. The first two read as follows:
"20. The Landlord shall not be liable for any failure of water supply or electric current, nor for injury or damage to person or property caused by the elements or by other tenants or persons in said building or resulting from falling plaster, or from steam, gas, electricity, water, rain, snow, or dampness which may leak or flow from any part of said building, or from the pipes, appliances or plumbing works of the same, or from any other place, nor for interference with light or other incorporeal hereditaments by anybody other than the Landlord. The Landlord shall not be liable for the presence of bugs, vermin or insects, if any, in the premises, nor shall the Landlord be liable for any latent defect in the building, nor responsible for any package or article left with or entrusted to an employee of the Landlord."
The plaintiff's personal injuries were not caused through any of the means specified in the foregoing sentences and, accordingly, they are not pertinent here. The third sentence, however, is pertinent and reads as follows:
"The Landlord shall in no event and under no circumstances be or become liable for any loss or damage which may occur to the tenant, his family, servants or guests or the property of either or any of them, however such damage or loss may arise and whether such property be contained in the demised premises, in the storage room, or in any other portion of said building or any place appurtenant thereto."
The foregoing provision is assuredly broad and comprehensive. It purports to release the defendant in advance of occurrence from liability for damage or loss, which would include personal injury and property damage, howsoever caused, whether the result of nonfeasance or misfeasance, active wrongdoing or willful and deliberate act. If the effect of the provision is to be restricted, it is not because of ambiguity. The question here is whether the provision does immunize the landlord from liability to his tenants for negligence and the maintenance of a nuisance.
*580 Generally, the law does not favor a contract exempting a person from liability for his own negligence, as it induces a want of care. Although in disfavor, a promise not to sue for future damage caused by simple negligence may be valid; but an attempted exemption from liability for future intentional tort or willful act or gross negligence is generally declared to be void. 6 Williston on Contracts (rev. ed.), sec. 1751(b), page 4964; 6 Corbin on Contracts, sec. 1472, page 872; 12 Am. Jur., Contracts, sec. 183, page 683; 17 C.J.S., Contracts, § 262, page 644.
The use of exculpatory clauses in commercial and business transactions as a device for release from liability is widespread, and the validity of a particular contract depends upon many factors. Where the public interest is involved, stipulations purporting to relieve from liability for negligence are usually held to be invalid. Thus, a common carrier may not exempt itself from liability to a passenger for hire, but may as to a non-paying rider. Kinney v. Central Railroad Co., 32 N.J.L. 407 (Sup. Ct. 1866), affirmed 34 N.J.L. 513 (E. & A. 1869); Sheridan v. New Jersey & N.Y.R. Co., 104 N.J.L. 622 (E. & A. 1928).
It is clear that private parties to a transaction lacking public interest are bound by their agreements relieving against liability for negligence. Globe Home Improvement Co. v. Perth Amboy, etc., Inc., 116 N.J.L. 168 (E. & A. 1936), was a suit against a credit bureau for negligently omitting a mortgage from its report. The defendant asserted an agreement releasing it from liability. In upholding the contract, Judge Wolfskeil said:
"If parties who make ordinary contracts cannot agree to limit the extent of liability, it is difficult to see where such a ruling would lead us. Contracts against liability for negligence we think are universally held valid except in those cases where a public interest is involved, as in the case of carriers * * *."
In these times, an exculpation clause in a credit information contract is not to be compared with an exculpatory clause in a lease for an apartment in an apartment *581 building. The duties and rights of parties to a contract, as in the Globe case, are created by and arise solely from the contract. The State has no interest in it. On the other hand, the State, because of its interest in the welfare of its citizens, regulates and supervises apartment buildings through the Board of Tenement House Supervision, N.J.S.A. 55:9 et seq. Additionally, the landlord is under a common-law duty for the maintenance of the premises under his control. Hussey v. Long Dock Railroad Co., 100 N.J.L. 380 (E. & A. 1924). Hence, the principle stated in the Globe case has no application to the facts in the instant case.
The first reported case in this State involving an exculpatory clause in an apartment house lease is the recent case of Wade v. Park View, Inc., 25 N.J. Super. 433 (Cty. Ct. 1953), affirmed sub nom. Wade v. Six Park View Corp., 27 N.J. Super. 469 (App. Div. 1953). There, suit was brought by a tenant to recover for injuries sustained from a fall upon snow and ice on the sidewalk which constituted the common approach to the apartment building, and the cause of action was based on the landlord's failure to remove the snow and ice. The trial court sustained the validity of the clause relying on the Globe case, supra, and held there was no distinction between the exculpatory clause in the Globe case and one in an apartment building lease. Upon appeal, the Appellate Division, in a per curiam opinion, affirmed for the reasons stated in the opinion below, but then seemed to qualify the effect of this by stating:
"This is a case of nonfeasance, not as plaintiff contends upon the appeal, one of affirmative negligence on the part of the landlord. * * * the public has not sufficient concern in such a clause to declare it invalid."
The court cited Kirshenbaum v. General Outdoor Adv. Co., 258 N.Y. 489, 180 N.E. 245, 84 A.L.R. 645 (Ct. App. 1932). However, it may not have been brought to the attention of the court that the Kirshenbaum case was expressly overruled by legislative enactment, Real Property Law, McKinney's Consol. Laws, c. 50, sec. 234, N.Y. Laws 1937, *582 c. 907, providing that any clause in a lease whereby a landlord attempts to exonerate himself from liability to a tenant because of the landlord's negligence is void and against public policy, and wholly unenforceable. We must, therefore, reexamine the question of the validity of exculpatory clauses in apartment house leases. Indeed, a comprehensive article, entitled Exculpatory Clauses in Leases, reported in 15 Ga. Bar J. 389 (1953), states at page 402:
"A large majority of the courts continue to approach the subject de novo each time a case involving an exculpatory clause becomes a subject of litigation."
Generally, the clause is strictly construed against the lessor. Sun Copper & Wire Co. v. White Lamps, Inc., 12 N.J. Super. 87 (Law Div. 1951); Zimmerman, Inc. v. Daggett & Ramsdell, Inc., 34 N.J. Super. 81 (Super. Ct., Essex Co., 1954). The subject is extensively discussed in an excellent Note in 175 A.L.R. 8; 42 Yale L.J. 139, Exculpatory Clause in Lease Exempting Landlord from Liability for Negligence (1932-3); 15 Temple U.L. Quart. 427, Exculpatory Clauses and Landlord's Liability for Negligence (1940-1); 15 U. of Pitt. L. Rev. 493, Exculpatory Clauses in Leases of Realty in Pennsylvania (1954); 6 Williston on Contracts (rev. ed.), sec. 1951(c), page 4968. From a study of these various sources and of decisions in various jurisdictions, we find that there is a sharp division of opinion on the specific subject. Some jurisdictions adhere strictly to the freedom of contract concept, holding that a lease is a matter of private agreement with which the general public is not concerned and that if a tenant enters into a contract releasing the lessor from liability for negligence, the law must give effect to and enforce such a contract. Weirick v. Hamm Realty Co., 179 Minn. 25, 228 N.W. 175 (Sup. Ct. 1929); Manius v. Housing Authority of City of Pittsburgh, 350 Pa. 512, 39 A.2d 614 (Sup. Ct. 1944). However, in Pennsylvania the clause will not relieve the defendant for failure to perform a positive statutory duty, such as proper fire escape safeguards. Boyd v. Smith, 372 Pa. 306, 94 A.2d 44 (Sup. Ct. 1953).
*583 Other jurisdictions, particularly New Hampshire, have held that "one may not by contract relieve himself from the consequences of the future non-performance of his common-law duty to exercise ordinary care." Papakalos v. Shaka, 91 N.H. 265, 18 A.2d 377, 379 (Sup. Ct. 1941).
In a recent case in Illinois involving only property damage and not personal injuries, Cerny Pickas & Co. v. C.R. Jahn Co., 347 Ill. App. 379, 106 N.E.2d 828, 832 (App. Ct. 1952), the court said:
"The rule deducible from the Illinois cases is in harmony with the holdings in other jurisdictions that such exculpatory provisions in a contract are against public policy, and such provisions should not be construed to exempt a party from its own negligence or violation of a positive duty imposed by law. * * * we consider it to be a sound principle of law that, even if the language of the instant lease clearly expressed an intention of the parties to exempt the defendant from liability for loss or damage occasioned by fire through the negligence of the defendant or through the defendant's alleged violation of a positive duty imposed by the ordinances, such provision would be against public policy and void. * * *"
In New York, until the Kirshenbaum case, supra, it had been consistently held that acts of affirmative negligence were not covered by an exculpatory clause. Kessler v. The Ansonia, 253 N.Y. 453, 171 N.E. 704 (Ct. App. 1930). The difficulty arose in deciding what negligence was "ordinary" and which "affirmative." In some cases it was held that the lessor's failure to make repairs after receiving notice of the defect constituted actionable negligence. Eugene C. Lewis Co. v. Metropolitan Realty Co., 112 App. Div. 385, 98 N.Y.S. 391 (Sup. Ct. 1906), affirmed 189 N.Y. 534, 82 N.E. 1126 (Ct. App. 1907); Garrity v. Propper, 209 App. Div. 508, 205 N.Y.S. 192 (App. Div. 1924).
In the Kirshenbaum case, supra, the plaintiff sought recovery for damages to goods caused by rain which entered the premises because of the landlord's failure to make adequate repairs. The court held that the question of who should bear the loss of misrepair or nonrepair was not a matter of public concern, that public policy did not forbid *584 an immunity clause voluntarily agreed upon, and held the clause binding upon the parties. The doctrine of the case has been followed in other jurisdictions, including our own in the Wade case, supra, in support of the validity of immunity clauses. However, as previously stated, it was repudiated by the New York Legislature when it enacted section 234 of the Real Property Law, Laws 1937, c. 907. The statute was challenged as being a deprivation of property without due process of law, but its validity was upheld. Billie Knitwear, Inc., v. New York Life Ins. Co., 174 Misc. 978, 22 N.Y.S.2d 324 (Sup. Ct. 1940), affirmed 262 App. Div. 714, 27 N.Y.S.2d 328, 329 (App. Div. 1941), affirmed 288 N.Y. 682, 43 N.E.2d 80 (Ct. App. 1942). The Appellate Division held:
"While there is no absolute fight of freedom of contract, the exercise of legislative authority to abridge it can be justified only where the enforcement of such a contract might conflict with dominant public interests. Advance-Rumely [Thresher] Co. v. Jackson, 287 U.S. 283, 288, 53 S.Ct. 133, 77 L.Ed. 306, 87 A.L.R. 285. The constitutional abridgment of the liberty to contract, as here involved, must be founded in some inequality of bargaining power of which, as the result of an economic situation, the courts may take judicial notice."
Presiding Justice Martin dissented, but only because the litigation concerned a commercial building and there was no showing that "as to commercial buildings, the tenant had the advantage of bargaining and not the landlord."
Similarly, Massachusetts repudiated its decisions upholding the validity of exculpatory clauses in leases, Telless v. Gardiner, 266 Mass. 90, 164 N.E. 914 (Sup. Jud. Ct. 1929); Peirce v. Hunnewell, 285 Mass. 287, 288, 189 N.E. 77 (Sup. Jud. Ct. 1934); Bacon v. Jaques, 312 Mass. 371, 44 N.E.2d 648 (Sup. Jud. Ct. 1942), by enacting legislation declaring void and against public policy any lease clause attempting to relieve a lessor for negligence in or about the leased premises and not within the exclusive control of the lessee. Acts and Resolves of Massachusetts, 1945, c. 445; *585 Gen. Stats. (Ter. ed.), c. 186, sec. 15. The validity of this statute was upheld in Manaster v. Gopin, 330 Mass. 569, 116 N.E.2d 134 (Sup. Jud. Ct. 1953).
The meaning of the phrase "public policy" is vague and variable; there are no fixed rules by which to determine what it is  it has been left loose and free of definition. Steele v. Drummond, 275 U.S. 199, 205, 48 S.Ct. 53, 72 L.Ed. 238 (1927). Although it may be primarily a prerogative of the Legislature to declare exculpatory contracts in landlord and tenant relationships to be contrary to public policy, the courts may also do so. Brooks v. Cooper, 50 N.J. Eq. 761 (E. & A. 1893), Allen v. Commercial Casualty Ins. Co., 131 N.J.L. 475 (E. & A. 1944). See dissenting opinions by Chief Justice Vanderbilt in Fox v. Snow, 6 N.J. 12, 21 (1950) and Reimann v. Monmouth Consolidated Water Co., 9 N.J. 134, 149 (1952).
The inadequacy of the public policy test has been recognized by many authorities. Another basis for declaring invalid a bargain, otherwise valid, which exempts one from future liability, is where a relationship exists in which the parties have not equal bargaining power; and one of them must accept what is offered or be deprived of the advantages of the relation. 6 Williston on Contracts (rev. ed.), sec. 1751(c), pages 4968-9; Llewellyn, What Price Contract, 40 Yale L.J. 704 (1931). In 37 Columbia L. Rev. 248, The Significance of Comparative Bargaining Power in the Law of Exculpation (1937), it was said:
"The question, accurately stated, is not whether an attempted exculpation should fail because the contract is `opposed to public policy' but whether social reasons for preserving the legal incidents of the relationship are outweighed by the desirability of allowing parties freely to adjust their needs to situations facing them, a policy which freedom of contract usually satisfies. * * * The validity of a particular exculpation contract depends on the whole complex of considerations bearing on the question whether it is socially desirable to allow escape from liability in the situation under scrutiny. Consequently, no single element can be relied upon to explain all the cases. Yet it is interesting to note that exculpation is rarely allowed where the parties are not on roughly equal bargaining terms."
*586 From an exhaustive study, the author of the note in 175 A.L.R. 8-140, comments that:
"The first leading principle is that contractual exemption from liability for negligence is rarely allowed to stand where the contracting parties are not on roughly equal bargaining terms. The farther apart the contracting parties are in their relative strength the greater is the probability that the exculpatory clause will be held invalid. Conversely, the closer they come in approaching absolute equality in bargaining strength, the greater is the probability that the clause will be held valid.
In determining the relative bargaining positions of the parties to a contract by which one of the parties is exempted from liability for his own negligence, the courts generally consider categories of individuals rather than a particular individual.
When it comes to the question of measuring the relative bargaining power of the parties, no definite rules exist to guide the courts. * * *
* * * However, one word of caution seems appropriate. Relative bargaining strength, although the most convenient touchstone, does not furnish an infallible basis of prediction in each and every case * * * it must also be recognized that the relative position of the parties is not, once established, fixed for all time, but may experience changes over the years if the surrounding conditions change. The example par excellence is the relationship of landlord and tenant. While once a relationship of equals, it has very definitely changed during the last few years into one in which the landlord occupies a superior position, and this change has been reflected in legislative enactments. * * *"
Courts are not impervious to the unequal bargaining position of the parties in interpreting their agreements. Reinhardt v. Passaic Clifton Nat. Bank, 16 N.J. Super. 430, 436 (App. Div. 1951), affirmed 9 N.J. 607 (1952). Taking judicial notice of the fact that the lessor and the lessee are definitely not in equal bargaining positions where suitable living quarters are at a premium, the courts have held exculpatory provisions to be contrary to public policy. Kay v. Cain, 81 U.S. App. D.C. 24, 154 F.2d 305 (C.A., D.C. 1946); State of Maryland, for Use of Pumphrey, v. Manor Real Estate & Trust Co., 176 F.2d 414, 418 (4 Cir. 1949). Mr. Justice Edgerton in Kay v. Cain, supra [81 U.S. App. D.C. 24, 154 F.2d 306], said:
"* * * it is doubtful whether a clause which did undertake to exempt a landlord from responsibility for such negligence (failure *587 to light a common stairway) would now be valid. The acute housing shortage in and near the District of Columbia gives the landlord so great a bargaining advantage over the tenant that such an exemption might well be invalid on grounds of public policy."
We also take judicial notice that under present housing conditions the bargaining positions of landlord and tenant in an apartment building are decidedly unequal. The Governor has made public statements about the housing shortage, the Legislature has enacted under N.J.S.A., Title 55, numerous statutes regarding housing and, indeed, as recently as December 20, 1954, in special session, it enacted an extension of rent control. Undoubtedly the stringency of the housing shortage is being lessened in certain areas and in the more expensive apartment houses, but any one aware of actual conditions knows that the unequal bargaining power between apartment house owners and tenants is very real and still exists. Jamouneau v. Harner, 16 N.J. 500 (1954).
Generally, the trend of decisions has been to hold that exculpatory clauses cannot immunize a landlord from responsibility for his acts of active wrongdoing. "Active wrongdoing," "affirmative negligence" and "misfeasance" have the same essential connotation; and, in short, may be said to be negligent act of commission. The distinction between these and nonfeasance is discussed in a line of cases from Allas v. Borough of Rumson, 115 N.J.L. 593 (E. & A. 1935), to Kelley v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954), reversed on other grounds 16 N.J. 265 (1954).
A nuisance in its primary significance does not involve the element of negligence as an essential, but it may grow out of active negligence. Milstrey v. City of Hackensack, 6 N.J. 400 (1951). When negligence amounts to the creation and maintenance of a nuisance, an exculpatory clause will not protect the lessor from liability. Godfrey v. Western Carolina Power Co., 190 N.C. 24, 128 S.E. 485 (Sup. Ct. 1925).
The judgment below is erroneous (1) whether we hold the exculpatory clause to be invalid on the ground that it is contrary to public policy because of the unequal bargaining *588 positions of the parties, or (2) because the plaintiffs should have been permitted to prove that the injuries resulted from active negligence or nuisance.
Under present conditions, the comparative bargaining positions of landlords and tenants in housing accommodations within many areas of the state are so unequal that tenants are in no position to bargain; and an exculpatory clause which purports to immunize the landlord from all liability would be contrary to public policy. In the instant case, the appendix is so scant that it does not state where the property is located, whether in a congested area where there is a housing shortage or in a rural community where there may be none. The defendant's name would indicate that it is the owner of a large housing development, probably in a congested area. In any event, the exculpation here attempted is so all inclusive and broad as to immunize against every conceivable wrongdoing, including affirmative acts of negligence and violations of positive statutory duty. As to such conduct and acts, it has always been the policy of the law to hold an exculpatory clause invalid.
We conclude that the trial court erred in holding as a matter of law that the provision of the lease was a complete defense. Accordingly, the summary judgment dismissing the complaint is reversed.