90 N.J. Super. 42 (1966)
216 A.2d 231
MIDLAND CARPET CORP., A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT,
v.
FRANKLIN ASSOCIATED PROPERTIES, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1965.
Decided January 6, 1966.
*43 Before Judges SULLIVAN, LEWIS and KOLOVSKY.
Mr. Sidney S. Stark argued the cause for appellant.
Mr. Charles J. Irwin argued the cause for respondent (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Elmer J. Bennett, of counsel; Mr. Irwin, on the brief).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendant became the owner of factory and warehouse property at the foot of Franklin Street and Paterson Plank Road, Jersey City, on November 15, 1961. Plaintiff occupied some 18,600 square feet of the first floor of the "Plate and Welding Shop" building on the property for "warehousing purposes and for light manufacturing" under a five-year lease dated October 14, 1958 entered into with L.O. Koven & Brother, Inc., defendant's grantor. Only *44 plaintiff lessee had access to the demised premises which adjoined the lessor's "galvanizing shop" on the southwest.
During the early morning hours of February 13, 1962, a water pipe in the demised premises burst; the water damaged 15 rolls of plaintiff's carpet stored there.
According to plaintiff, the pipe burst when the water in it froze because of defendant's failure to supply sufficient heat to the premises despite a lease covenant requiring it to do so. Defendant contends that (1) if the pipe did freeze, this resulted not from its default but from the failure of plaintiff to comply with its lease obligation to replace the many windows in the demised premises which had been broken by boys throwing rocks from cliffs adjacent to the property; and (2) in any event, the asserted claim may not be successfully prosecuted because by the express terms of the lease, plaintiff had assumed all risk of damage to its property occurring in the demised premises and had agreed that the lessor should not be liable therefor.
After a trial without a jury, the trial court resolved all issues in favor of plaintiff and entered judgment for $4,000, the stipulated damages. Defendant appeals.
Since we are satisfied that provisions of the lease bar the assertion of the claim here made by plaintiff against defendant, the judgment must be reversed. It therefore becomes unnecessary to consider whether under the test outlined in State v. Johnson, 42 N.J. 146, 158 (1964), the record supports the trial court's findings with respect to the alleged breaches of the duties imposed by the lease on the respective parties and the causal relationship of such breaches to the bursting of the pipe.
The lease in this case, 17 pages in length and containing 31 paragraphs or "Articles," reflects a studied attempt by a landlord and tenant of commercial and industrial property to spell out their respective rights and obligations and a distribution of the risks incident to the tenant's occupancy.
Provisions dealing with the distribution of risks of loss and liability for personal injury or property damage and the obligation *45 to obtain insurance are found in articles Twelfth, Fourteenth and Eighteenth which provide as follows:
"TWELFTH: Lessor shall not be liable for any property damage caused by or resulting from water, steam, electricity, gas, ice or snow, which may be sustained by Lessee or other persons, or for any other damage or injury resulting from carelessness, negligence or improper conduct on the part of any other lessee or its agents or employees, or by reason of the breakage, leakage or obstruction of the water or soil pipes, or other leakage in or about said building.

* * * * * * * *
FOURTEENTH: Lessee assumes all risk of and responsibility for loss of life or injury or damage to the person, or property of any person or persons, corporation or corporations whatsoever (including, but without limitation, the parties hereto and their respective officers, agents, invitees, licensees and employees) occurring within the demised premises; and Lessee further assumes all risk of and responsibility for such loss of life or property or injury or damage occurring without the demised premises from or by reason of the fault, failure or negligence of Lessee, its servants, agents and employees (including, but without limitation) such fault, failure or negligence arising in connection with the non-exclusive use of said existing roadway, and Lessee hereby agrees to release, indemnify and save harmless Lessor from and against any and all such loss, injury and damage and any and all claims, demands, actions, judgments, costs, expenses and liabilities of every name and nature which may arise or result from or by reason of any such loss, injury or damage or from or by reason of the failure of Lessee fully to keep, perform, observe and fulfill any of the covenants, conditions or restrictions herein contained on the part of Lessee to be kept, performed, observed and fulfilled.
This Article is not to be deemed or interpreted as being for the benefit of any third party.

* * * * * * * *
EIGHTEENTH: Contemporaneously with the execution and delivery of this Indenture of Lease, Lessee, at its sole cost and expense, shall procure and thereafter keep in full force and effect a policy or policies of public liability and property damage insurance, which policy or policies shall be issued by insurance companies approved by Lessor and shall be conditioned:
(1) To pay on behalf of Lessee all sums up to FIFTY THOUSAND DOLLARS ($50,000.00), which Lessee shall be obligated to pay by reason of the liability imposed upon and assumed by Lessee, by and under the terms of Article FOURTEENTH hereof, for all damages arising out of bodily injury, including death, at any time resulting therefrom, sustained by one person in any one accident and subject to that limit for each person to pay on behalf of Lessee all sums up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) which Lessee is obligated to pay by reason of the liability imposed *46 upon and assumed by Lessee by and under the terms of said Article FOURTEENTH for all damages arising out of bodily injury, including death, at any time resulting therefrom sustained by two or more persons in any one accident; and
(2) To pay on behalf of Lessee all sums up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) which Lessee shall become obligated to pay by reason of the liability imposed upon and assumed by Lessee by and under the terms of said Article FOURTEENTH for all damages arising out of injury to or destruction of property in any one accident, and subject to that limit for each such accident, a total of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) during the policy period.
Such policy or policies of insurance also shall provide for giving to the Lessor at its office at No. 154 Ogden Avenue, Jersey City 7, New Jersey, at least thirty (30) days' prior notice of cancellation thereof of any changes therein. Said policy or policies of insurance must be approved by Lessor as to form and copies thereof together with proof of the payment of the premium thereon, must be furnished to Lessor."
Stipulations or provisions against liability for negligence found in leases or other types of contracts are to be strictly construed. Freddi-Gail v. Royal Holding Corp., 34 N.J. Super. 142 (App. Div. 1955); Kuzmiak v. Brookchester, 33 N.J. Super. 575, 582 (App. Div. 1955); Sun Copper and Wire Co. v. White Lamps, Inc., 12 N.J. Super. 87 (Law Div. 1951). But "where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty." 17 Am. Jur.2d, Contracts, § 241, p. 625; see also Wade v. Six Park View Corp., 27 N.J. Super. 469, 471 (App. Div. 1953). "It has been decided many times and in many cases that the court will not make a different or a better contract than the parties themselves have seen fit to enter into." Washington Construction Co., Inc. v. Spinella, 8 N.J. 212, 217 (1951); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).
By its express terms, article Fourteenth of the lease bars the claim here asserted for the damage to the carpets stored in the leased premises, for plaintiff thereby "assumes all risk of and responsibility for * * * damage to the * * * property of any person * * * or corporation whatsoever *47 (including without limitation, the parties hereto * * *) occurring within the demised premises," and "agrees to release, indemnify and save harmless Lessor from and against any and all such * * * claims."
No problem exists as to the validity of the lease provision. An exculpatory clause in an apartment house lease has been held invalid because of the unequal bargaining power of the landlord and tenant of a multiple dwelling, particularly "where suitable living quarters are at a premium," Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955).
However, in the case of a lease of industrial property, as in the instant case, no such inequality of bargaining position exists; the exculpatory provisions of such a lease are normally valid and enforceable. Annotation, "Limiting liability for own negligence," 175 A.L.R. 8, 83; 2 Powell, The Law of Real Property, § 240, p. 278 (1950); Restatement, Contracts, § 574; see Wade v. Six Park View Corp., supra, 27 N.J. Super., at p. 471. As the court said in Kuzmiak:
"It is clear that private parties to a transaction lacking public interest are bound by their agreements relieving against liability for negligence." (33 N.J. Super., at p. 580)
See also Globe Home Improvement Co. v. Perth Amboy, etc., Inc., 116 N.J.L. 168 (E. & A. 1936); Buchanan & Smock Lumber Co. v. E.J. Water Co., 71 N.J.L. 350 (Sup. Ct. 1904).
Another facet of the same principle exists in the case of indemnification agreements in building and construction contracts. See Stern v. Larocca, 49 N.J. Super. 496, 501 (App. Div. 1958); Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121 (App. Div. 1960); Rommell v. U.S. Steel Corp., 66 N.J. Super. 30, 42 (App. Div. 1961), certification denied 34 N.J. 580 (1961); Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 514 (App. Div. 1961), affirmed 36 N.J. 532 (1962).
In Rommell v. U.S. Steel Corp., supra, the court said:
*48 "Such indemnification agreements * * * may be worded so broadly and clearly as to provide for absolute indemnification of the owner, even though the owner's negligence, sole or concurring, active or passive, caused injury to the contractor's employee." (66 N.J. Super., at p. 42)
So, too, in Buscaglia v. Owens-Corning Fiberglas, supra, the court commented:
"The Stern and Cozzi cases, supra, are particularly reflective of the present-day judicial view that indemnity clauses of construction contracts are to be viewed realistically as efforts by business men to allocate as between them the cost or expense of the risk of accidents apt to arise out of construction projects on a fairly predictable basis, rather than upon the generally debatable and indeterminate criteria as to whose negligence, if any, the accident was caused by, and to what degree. See Dayton Fabricated Steel Co. v. Dayton Town & Country, Inc., 99 Ohio App. 309, 133 N.E.2d 423, 425 (Ct. App. 1954). It is generally contemplated, as was here specifically arranged for in the contract, that the risk of accident claims will be covered by insurance, and the only practical feature of the bargain, ordinarily, is the decision as to who is to bear the cost of the insurance. See Cozzi v. Owens Corning Fiber Glass Corp., supra, 63 N.J. Super., at p. 126. Here it was Catalytic. It is significant here that Catalytic was required to carry contractual liability insurance, presumably to cover its liability to Owens on the very type of claim here in litigation. Note the cross-reference in section 19 to the insurance coverage provided in section 18." (68 N.J. Super., at p. 515)
What the court said in Buscaglia is applicable to the lease provisions in this case. Here, too, the practical effect of the lease provisions was to determine who was to obtain and to bear the cost of insurance to indemnify against loss or damage occurring to property within the demised premises; and this irrespective of whether the property damaged was that of the lessor, of the lessee or of anyone else. Indeed, with respect to liability to others, article Eighteenth requires the lessee to maintain insurance against liability "imposed upon and assumed by Lessee, by and under the terms of Article Fourteenth hereof." It may be noted, although not of evidential significance because the matter was not pursued or developed at the trial  the information was supplied at oral argument on appeal, that plaintiff had or obtained insurance which indemnified it against the very loss that occurred here.
*49 The trial court ruled that defendant's failure to supply adequate heat was active wrongdoing and that therefore the lease provision did not absolve the defendant from liability. However, the failure to comply with the contractual obligation to supply adequate heat would appear to constitute nonfeasance, cf. Wade v. Six Park View Corp., supra, 27 N.J. Super., at p. 471, not "affirmative negligence" or "active wrongdoing." Cf. Hayden v. Curley, 34 N.J. 420, 424 (1961); Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935). More important, the application of article Fourteenth does not depend upon whether the damage was caused by nonfeasance or affirmative acts of negligence. The determinative factor under article Fourteenth is that the damage occur in the demised premises.
The judgment is reversed with direction that judgment be entered in favor of defendant.