113 N.J. Super. 416 (1971)
274 A.2d 59
SWISSCRAFT NOVELTY CO., INC., PLAINTIFF-APPELLANT,
v.
ALAD REALTY CORP. AND COMMODORE REALTY CORP., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1970.
Supplemental material filed October 16, 1970.
Decided February 23, 1971.
*418 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. William G. Becker, Jr. argued the cause for appellant (Messrs. Shanley & Fisher, attorneys).
Mr. Richard D. Catenacci argued the cause for respondents (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys).
*419 The opinion of the court was delivered by LEWIS, P.J.A.D.
Plaintiff Swisscraft Novelty Co., Inc. (tenant) appeals from a summary judgment entered by the Law Division in favor of defendants Alad Realty Corp. and Commodore Realty Corp. (landlord).
In essence, this is a controversy between insurance companies, for the respective parties, as to which carrier is liable for losses sustained by the tenant resulting from water damage to its merchandise. As indicated in the 1962 assignment of lease to tenant, the roof of the demised premises had to be raised to accommodate the tenant's embroidery machinery. The landlord undertook to perform the work but allegedly failed to do it in a satisfactory manner in that some of the leaders required to carry water off the roof were not properly reconnected, and, as a result thereof, water accumulated on the roof and broke through the flashings, flooding the leaseholder's premises on September 16 and October 19, 1966. On the first occasion, the water damage to tenant's property was approximately $3,000. The landlord was immediately notified of the loss, and tenant was assured that the defective condition would be remedied. This was not done by October 19, 1966 when after another rainstorm, water again leaked through the roof and walls, causing an estimated $29,000 in damages to tenant's merchandise. Thereafter, the leak was repaired.
Plaintiff's suit was initiated by a complaint filed on December 19, 1967, which was amended March 18, 1968 to add Commodore Realty Corp. as a defendant. The action was predicated upon the alleged breach of warranty and negligence of the landlord. An answer was filed by defendants on June 4, 1968, denying such allegations and asserting a variety of separate defenses, including contractual exculpation from any responsibility for loss or damage to plaintiff's property occurring in or about the demised premises. In response to a discovery interrogatory propounded by plaintiff, defendants stated that repairs were *420 made as complaints were received "unless impossible to do so because of weather conditions."
The matter was pretried on April 2, 1969, at which time the specification of legal issues was stated to be "[n]egligence, lease provisions and breach thereof if any, exculpatory provisions, damages." The case was then listed for trial on June 17, 1969 and, thereafter, adjournments were procured by plaintiff's substituted attorneys and the trial was rescheduled for July 30, 1969, which was again, at plaintiff's request, adjourned to September 25, 1969.
In the meantime, defendants, on May 8, 1969, filed a notice of motion for summary judgment and, on July 16, 1969, plaintiff filed a counter-motion for summary judgment and other relief, including leave to file a second amended complaint and to amend the pretrial order to include claims against defendants "for gross negligence and for wilful and wanton misconduct with respect to the damages sustained in the incident of October 19, 1966." These motions were heard on August 29, 1969, and an order was entered granting defendants' motion for summary judgment and denying plaintiff's counter-motion. It is from that order that plaintiff appeals, contending in substance that (1) defendants should be estopped from asserting as a defense the exculpatory clause in the lease; (2) defendants' violation of a municipal building ordinance and their covenants in the rental document to keep the roof in good repair rendered the exculpatory clause ineffective; (3) the trial court erred in denying its counter-motion to amend the complaint and the pretrial order, and (4) the trial court erred in granting summary judgment in defendants' favor.
We are here concerned with a commercial lease, a product of parties who negotiated its terms fairly and freely, at arm's length. There is no contention that either party was in an unfair bargaining position or that the negotiations were in any way tainted with fraud or misrepresentation. The parties saw fit to agree upon a distribution of risks with regard to their respective property interests and included *421 in their private contractual arrangements an exculpatory-indemnification provision in favor of the landlord which reads:
Eighth.  The Landlord shall not be responsible for the loss of or damage to property, or injury to persons, occurring in or about the demised premises, by reason of any existing or future condition, defect, matter or thing in said demised premises or the property of which the premises are a part, or for the acts, omissions or negligence of other persons or tenants in and about the said property. The Tenant agrees to indemnify and save the Landlord harmless from all claims and liability for losses of or damage to property, or injuries to persons occurring in or about the demised premises.
In the context of a commercial or industrial lease, where the language is plain and unambiguous and the transaction is unaffected by public interest or unequal bargaining power, such, for example, as prevailed in Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955) (which dealt with an apartment lease), no problem ordinarily exists as to the validity of an exculpatory provision in a lease agreement. See Mayfair Fabrics v. Henley, 48 N.J. 483 (1967); Midland Carpet Corp. v. Franklin Assoc. Properties, 90 N.J. Super. 42 (App. Div. 1966). Accord, Wade v. Six Park View Corp., 27 N.J. Super. 469 (App. Div. 1953); Globe, etc., Improvement Co. v. Perth Amboy, etc., Inc., 116 N.J.L. 168 (E. & A. 1936).
The judiciary will not undertake the writing of a different or better contract between the parties. Marini v. Ireland, 56 N.J. 130, 143 (1970); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960), cited in Midland, supra, at 46; Washington Construction Co., Inc., v. Spinella, 8 N.J. 212, 217 (1951).
Plaintiff attempts to distinguish Mayfair and Midland, supra, because the leases there under consideration required the contracting parties to insure their respective interests. The argument seems to run that, absent an agreement to carry insurance, there can be no immunization under an exculpatory clause. Such a hypothesis is untenable. *422 The practical and salutary thesis as enunciated in Mayfair is that
* * * The distribution of the risks entailed no elements of injustice and did not conflict with the public interest. It was a private contractual arrangement fairly and freely entered into and which the common law would sympathetically carry out in accordance with the contemplation of the parties. [48 N.J., at 488-489]
The central question is not whether the parties agreed to insure against loss the risks they severally assumed inter sese but, rather, whether they so clearly allocated the risks that each party knew, or should have known, the existence of its contingent liability and was thus placed in a position where it could protect itself against such loss by adequate insurance coverage or otherwise. Indeed, that is precisely what happened here. Plaintiff assumed full responsibility for any damage to its property by reason of any existing or future condition of the demised premises, obtained insurance, paid the premiums for such coverage and, in fact, received payment from its insurance carrier for the September and October damages to its merchandise. Primarily with respect to the October damage, promissory estoppel is projected as a bar to the exculpatory clause being asserted as a defense to plaintiff's claim. It is undisputed that defendants were obliged under the lease to keep the roof in repair. The 31st paragraph of that instrument provides, "The Landlord shall be liable for structural repairs occasioned or required during the term of the said demise but the same shall be limited to such repairs required for the maintenance of the roof and side walls and floors." Also uncontroverted is the fact that after the September loss defendants' agent stated that the roof would be repaired.
The doctrine of "promissory estoppel" is of comparatively recent origin in our jurisdiction. See Friedman v. Tappan Development Corp., 22 N.J. 523, 535-536 (1956). See generally Restatement, Contracts, § 90 at 110 (1932); 1A Corbin, Contracts (2d ed. 1963), §§ 200, 205; 1 Williston, *423 Contracts (3d ed. 1957), § 140. In E.A. Coronis Assocs. v. M. Gordon Constr. Co., 90 N.J. Super. 69, 77 (App. Div. 1966), this court noted that although New Jersey had not yet applied the doctrine of promissory estoppel, there was no reason why, in an appropriate factual situation, the doctrine should not be recognized and effectuated. It was there remarked:
* * * We see no difference between substantial reliance on a representation or promise as to current or past facts and as to future facts. It is only right and just that a promise a promisor knows will induce action of a substantial character be enforced if it is in fact relied upon. [at 77; emphasis added]
Here, the roof has been repaired and there is nothing in the record to suggest that the landlord at any time promised not to enforce its exculpatory and indemnificatory rights under the lease. The elements of a promissory estoppel case are essentially factual and inappropriate to a summary judgment. Coronis, supra, at 79. Nevertheless, the instant facts do not call for the invocation of such an equitable doctrine to aid plaintiff in an effort to avoid the application of the rationale of Mayfair, and Midland, supra.
The argument, that a violation of the Borough of Fairview building code precluded the enforcement of the exculpatory clause, is unpersuasive. The pertinent language in the code reads:
All buildings shall be roofed over with tin, iron, gravel, shingle, slate, tile or other approved material in such a way as to properly shed water, which water shall be conducted to the ground in such a manner as to not allow it to run over the sidewalk or upon property belonging to another person.
The roof of the demised premises was reconstructed in 1962 and the defects or disrepairs in question were not evidenced until the water damages in 1966. These untoward events affected only the rights and remedies of private commercial parties who had mutually contracted for a distribution and assumption of the risks involved in their landlord-tenant relationship. *424 Manifestly, the lease did not have as its direct object or purpose a violation of the building code or any local, state or federal law, rules or regulations. Note, Naseef v. Cord, Inc., 90 N.J. Super. 135, 142 (App. Div.), aff'd 48 N.J. 317 (1966). McCarthy v. Nat. Assoc. for Stock Car Racing, etc., 48 N.J. 539 (1967), cited in plaintiff's brief, is plainly distinguishable.
Defendants concede that an exculpatory clause should not be construed to absolve a landlord from liability arising from the landlord's breach of covenants in the lease unless that result is unavoidable. They maintain that generally an exculpatory clause has as its purpose the imposition of the insurable risk of personal injury or property damage loss upon the tenant which in no way attenuates the landlord's contractual covenants to repair. We agree; these respective provisions are separate and distinct.
The critical issues in this controversy are whether the trial court properly denied plaintiff's counter-motion to further amend the complaint and the pretrial order to assert a new cause of action against defendants for gross negligence and for willful and wanton misconduct with respect to the damages sustained on October 19, 1966, and whether it properly entered summary judgment for defendants.
The import of the amendment sought by plaintiff's substituted attorney stems from a judicially declared principle of law recognized by this court in Kuzmiak, supra, wherein we observed that
* * * [a]lthough in disfavor, a promise not to sue for future damage caused by simple negligence may be valid; but an attempted exemption from liability for future intentional tort or wilful act or gross negligence is generally declared to be void. 6 Williston on Contracts (rev. ed.), sec. 1751(b), page 4964; 6 Corbin on Contracts, sec. 1472, page 872; 12 Am. Jur., Contracts, sec. 183, page 683; 17 C.J.S., Contracts, § 262, page 644. [33 N.J. Super. at 580]
See also Brady v. Glosson, 87 Ga. App. 476, 477-480, 74 S.E.2d 253, 255-257 (App. Ct. 1953); Lane v. New York Telephone Company, 7 App. Div.2d 702, 179 N.Y.S.2d *425 536 (App. Div. 1958); 6A Corbin, Contracts, § 1472 at 596-597 (1962); Restatement, Contracts § 574, comment (a), at 1079-1080.
The motivating reason for denying the counter-motion was expressed by the trial judge thusly, "I am constrained to deny the motion to add another cause of action at this time which, after such a long period of time has elapsed * * *."
It was noted in Tackling v. Chrysler Corp., 77 N.J. Super. 12, 16 (Law Div. 1962), that "courts should be liberal in allowing amendments to save actions, if possible, from the bar of the statute of limitations," and should set aside subtleties "and answer technical objections by an honest effort to determine the real issues on their merits and to do substantial justice between litigants." This admonition, approvingly quoted in Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 340 (1970), is especially pertinent in the present circumstances.
The transcript of the hearing on plaintiff's counterclaim reveals that counsel for defendants took this position:
I would say, your Honor, that I would be very happy today if you ruled on the question of negligence. If you said the exculpatory provision in that contract bars an action for negligence without ruling as to whether it bars an action for willful, wanton and reckless conduct. I would be very happy. That we could start a new suit under a new theory, and after proper discovery I will be very happy to come back and argue against that, but I feel at this juncture we are merely obfuscating the real issues by throwing in willful, wanton and reckless conduct.
We also note the statement in defendants' brief before this court that
Plaintiff submits that he is precluded from starting a new suit by the doctrine of res judicata citing Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704, 61 A.2d 180. If that be the case, and this court feels that the plaintiff should not be precluded from having an opportunity to pursue his chimerical claim of willful and wanton misconduct, this court should not disturb the summary judgment on the question of negligence, but simply remand the action for further proceedings solely on the allegation of gross or willful conduct.
*426 Based on the issue of negligence, as alleged in the original complaint and as amended before pretrial, we entertain no hesitancy about affirming the summary judgment entered in defendants' favor. The judgment with respect to the damages sustained in September 1966 should, therefore, stand. Plaintiff's counter-motion to amend the complaint and pretrial order, however, should have been granted; accordingly, the matter is remanded to the trial court for a determination as to whether defendants' failure to make essential repairs to the roof, after notice of the September loss and before the October incident, was simple negligence or mere nonfeasance or, on the other hand, constituted willful and wanton misconduct or gross negligence, i.e., an extreme departure from the ordinary standard of care. Prior to a hearing on that issue, the parties shall be entitled to pursue additional discovery as may be reasonably limited by the trial court. We do not take judicial notice of the climatological data submitted after oral argument; it may be of significant relevance at the hearing on remand.
Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.