203 N.J. Super. 477 (1985)
497 A.2d 530
TESSLER AND SON, INC., PLAINTIFF-APPELLANT,
v.
SONITROL SECURITY SYSTEMS OF NORTHERN NEW JERSEY, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1985.
Decided August 6, 1985.
*480 Before Judges PRESSLER, BRODY and COHEN.
Louis A. Vespasiano argued the cause for appellant.
Norman A. Maranz argued the cause for respondent.
The opinion of the court was delivered by COHEN, J.A.D.
Plaintiff operates an auto body repair shop in Newark. Defendant installs and services burglar alarm systems. One of its systems was installed in plaintiff's premises. After an undetected break-in, plaintiff sued defendant for its losses, charging breach of contract, negligence and "gross and wanton negligence." A second count was abandoned at trial.
The break-in occurred during the term of the third annual contract between the parties. At the beginning of the first contract, defendant sold and installed sensitive listening equipment in various parts of plaintiff's shop at a cost to plaintiff of $800. Defendant then provided continuous central station monitoring of the listening equipment during plaintiff's off hours so that it could detect any sounds of a break-in and immediately alert plaintiff and the police. The monitoring charge was $50 *481 per month. Plaintiff additionally paid the telephone company's charges for a trunk line connecting its premises with the monitoring station.
The evidence at trial permitted the conclusion that the break-in occurred about one and a half hours before defendant recognized and reported it; that the burglars first broke a substantial amount of skylight glass and then gained entry by smashing through a block wall with a sledge hammer; that a wall of metal shelves holding paint cans was thrown over and that a good deal of noisy activity took place over a long period of time in the shop. Defendant's monitoring employee failed to detect the break-in because she turned down the sound volume on the listening equipment to avoid hearing sounds she considered non hostile, including the barking of plaintiff's guard dog, which defendant's employees had previously adjudged overexcitable. She was finally awakened to the true situation only when an independent perimeter alarm was set off by the burglars' raising an overhead door to drive away a customer's Cadillac.
In answer to the court's special verdict questions, R. 4:39-1, the jury found that defendant failed to perform its contract obligations reasonably, diligently and competently; that losses of the nature incurred by plaintiff were foreseeable as a result of a contract breach, and that losses were incurred by plaintiff as a result of defendant's failure to perform. The jury was not asked if defendant was guilty of the complaint's charge of "gross and wanton negligence." The jury was not asked to fix the quantum of damages. Instead, the court entered judgment for $250, for reasons which occasion plaintiff's appeal.
Each of the three yearly contracts between the parties contained a provision limiting defendant's liability to $250. Among other things, they said:
If Sonitrol should be found liable for loss or damage due to the failure of its services in any respect, even if due to Sonitrol's negligence, its liability shall be limited to a sum equal to ten percent of the annual monitoring charge for the premises or $250 whichever is greater, as liquidated damages and not as a penalty, ....
*482 The first two yearly contracts were accompanied, however, by a separate guarantee. It promised that, if there was an undetected and unreported forcible entry, defendant would make good plaintiff's losses and damages up to $5,000. Partway through the second contract, defendant revoked the guarantee. When it came time to sign the third contract, plaintiff asked for the elimination of the provision limiting defendant's liability in view of the withdrawal of the $5,000 guarantee. Defendant declined to remove the provision, and plaintiff nevertheless signed the contract. It was satisfied with defendant's services and was mindful of its own $800 investment in equipment, which it was afraid would be rendered useless by ending defendant's services.[1]
The clause purports to be a liquidated damage clause, justified, according to its own language, by the parties' agreement
that Sonitrol is not an insurer, ... that the amounts payable to Sonitrol ... are based on the value of the services and ... it is impractical, if not impossible, to fix the actual damages....
In real effect, however, it is an exculpatory clause, because it denies liability for all but a nominal amount of damages. The limit of $250 is obviously not the result of an effort to fairly estimate plaintiff's likely damages from a break-in. Defendant's service cost $800 at the outset and $600 per year plus telephone company charges. It is unlikely that a business would spend those amounts to protect $250.
The trial court held that the contractual limitation on liability was enforceable and, in the circumstances revealed by the proofs, limited plaintiff's damages. We agree. Exculpatory clauses like this one are valid where they do not adversely affect the public interest, where the exculpated party is not under a public duty to perform, as in the case of a public utility *483 or common carrier, and where the contract does not grow out of unequal bargaining power or is otherwise unconscionable. These principles have grown out of cases involving burglar alarms, Foont-Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J. Super. 254 (App.Div. 1973), aff'd o.b., 64 N.J. 197 (1974); fire alarms, Abel Holding Co., Inc. v. American Dist. Telegraph Co., 138 N.J. Super. 137 (Law Div. 1975) aff'd 147 N.J. Super. 263 (App.Div. 1977); and lease provisions assigning to an industrial or commercial tenant the risk of loss of its goods however caused. Midland Carpet Corp. v. Franklin Assoc. Properties, 90 N.J. Super. 42 (App.Div. 1966). Such a clause will not be enforced in the case of a residential apartment lease where suitable living quarters are at a premium and unequal bargaining power results, Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App.Div. 1955), or where the limitation clause is hidden in a provision ostensibly conferring a benefit on the buyer of fire protection equipment. Jutta's, Inc. v. Fireco Equipment Co., 150 N.J. Super. 301 (App.Div. 1977).
The cited cases do not determine what effect the clause has on plaintiff's cause of action. Neither Foont-Freedenfeld nor Abel Holding Co. nor Midland Carpet involved allegations of the kinds of extreme departure from diligent contract performance charged in the present complaint. Plaintiff charged defendant, not only with breach of contract and negligence, but also with "gross and wanton negligence." The present contract clause limits damages recoverable for its failures "in any respect, even if due to Sonitrol's negligence." The clause thus applies to a default in any aspect of Sonitrol's service, and it is not rendered inoperative if the default was negligently caused. The clause does not purport to limit liability for willful and wanton misconduct. Although plaintiff's complaint is inarticulately drawn, we read it to charge willful and wanton misconduct in addition to a high degree of negligence.
An exculpatory clause that purports to shield a commercial landlord from liability to tenant for negligence must *484 plainly say so, unless the intent to do so is evident from the arrangement of the parties. Carbone v. Cortlandt Realty Corp., 58 N.J. 366, 368 (1971); Freddi-Gail v. Royal Holding Corp., 34 N.J. Super. 142 (App.Div. 1955). See also Rubin v. A.M.C. Home Inspection & Warranty Service, 175 N.J. Super. 315 (Law Div. 1980), involving a home inspection service contract. We hold that an exculpatory clause may expressly excuse or limit liability for negligent contract performance, but that such a clause does not operate to bar a claim of willful and wanton misconduct.
In Kuzmiak v. Brookchester, 33 N.J. Super. at 580, this court stated in dictum that, although a promise not to sue for simple negligence may be valid, an attempted exemption from liability for intentional tort or willful act or gross negligence is generally declared to be void. In Swisscraft Novelty Co. v. Alad Realty Corp., 113 N.J. Super. 416 (App.Div. 1971), this court quoted the Kuzmiak dictum and held that an exculpatory lease clause that was sufficient to bar damage suit for lessor negligence would not bar a complaint alleging willful and wanton misconduct or gross negligence.
Willful and wanton misconduct is different in kind from negligence. It is defined in McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970):
[I]t must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will probably or likely result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.
See also Tabor v. O'Grady, 59 N.J. Super. 330, on reh. 61 N.J. Super. 446 (App.Div. 1960). Thus, a contract clause that bars suit for negligent failure to perform contract responsibilities does not bar suit for willful and wanton misconduct. Gross negligence, however, is different from negligence only in degree. There is no reason why that difference should have an operative effect in the circumstances of this case. Cf. Di Giovanni v. Pessel, 55 N.J. 188 (1970). The difference has no *485 vitality under the comparative negligence statute, N.J.S.A. 2A:15-5.1, Draney v. Bachman, 138 N.J. Super. 503 (Law Div. 1976). We hold that an exculpatory clause which bars suit for negligent performance of contractual duties also bars suit for very negligent or grossly negligent performance.[2]
In other jurisdictions, the better authorities support our views. In Peacock's, Inc. v. South Central Bell, 455 So.2d 694 (La. App. 1984), a telephone company tariff which limited liability for negligent performance did not bar suit charging the company with willful misconduct in connecting a burglar alarm system. In Morgan Co. v. Minnesota Min. & Mfg. Co., 310 Minn. 305, 246 N.W.2d 443 (1976), an exculpatory clause in a burglar alarm contract which excused negligent nonperformance did not bar suit charging intentional misconduct and "willful and wanton negligence." The court did not define the latter term. In Shaer Shoe Corp. v. Granite State Alarm, Inc., 110 N.H. 132, 262 A.2d 285 (1970), a sprinkler system contract which limited liability for "willful default or negligence" was held effective to bar suit for both causes of action.[3]
In Lenny's Inc. v. Allied Sign Erectors, Inc., 170 Ga. App. 706, 318 S.E.2d 140 (1984), a provision in a lease of a fire detection system limited damages for negligent performance. The provision was held ineffective in a case of willful and wanton conduct. In Carriage Meat Co., Inc. v. Honeywell, Inc. 442 So.2d 796 (La. App. 1983), a contract to monitor the temperature of a commercial freezer limited liability for negligent nonperformance. The clause was held not to apply to willful failure to perform or other deliberate disregard of duty.
Florida has held that an exculpatory clause in a burglar alarm contract barring suit for negligent performance also bars *486 suit charging gross negligence, but not intentional tort. L. Luria & Son, Inc. v. Honeywell, Inc., 460 So.2d 521 (Fla.App. 1984); Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3rd DCA 1984), reh. den. 461 So.2d 114 (Fla. 1985). One federal court, applying Pennsylvania law, has ruled the other way in a case factually like this one. Douglas W. Randall, Inc. v. AFA Protective Systems, 516 F. Supp. 1122 (E.D.Pa. 1981), aff'd 688 F.2d 820 (3 Cir.1982).
The trial court ruled that plaintiff's evidence, viewed most favorably and indulgently, was insufficient to show "reckless disregard of consequences." We agree that there was insufficient evidence for the jury reasonably to have found willful and wanton misconduct. Defendant's conduct was, at worst, negligent misjudgment in interpreting the sounds emanating from plaintiff's premises during the break-in. For that reason, the trial court was correct in limiting plaintiff's recovery to the amount permitted by the contract in cases of defendant's negligence.
Affirmed.
NOTES
[1] The trial court correctly viewed plaintiff's $800 investment in equipment as insufficient to estop defendant from terminating the $5,000 guarantee. It also correctly found no element of coercion or unequal bargaining power in the contract.
[2] To that extent, we are constrained to disagree with portions of Kuzmiak v. Brookchester, supra, and Swisscraft Novelty Co. v. Alad Realty Corp., supra.
[3] We do not decide whether such a broad exculpatory clause would be enforceable in New Jersey. We merely note that the parties and the court recognized that there were two distinct causes of action and dealt with them.