LOUIS J. HEMHAUSER et al., complainants,

*v.*

ANNA HEMHAUSER et al., defendants.

[Decided February 5th, 1932.]

*Mr. Joseph Slifkin,* for the complainants.

*Mr. William Newman* and *Mr. Benjamin Newman,* for the defendants.

CHURCH, V. C.

This is a suit for the specific performance of a contract for the sale of lands. The defendant Anna Hemhauser agreed to convey certain properties mentioned in the bill of complaint to complainants for the sum of $4,210. Of this, $960 was to go to the Millburn Building and Loan Association to reduce a mortgage on one of the properties to be conveyed to complainants, and $250 for legal services, leaving her a

net return of $3,000. In addition, some taxes and assessments were to be paid on property still retained by her.

According to the real estate expert for complainant, the property at the time of the execution of the agreement was worth $71,000 and there was an equity of about $25,000. The valuation of the experts for defendants is higher. Striking an average, the equity would be about $40,000. There were unpaid taxes and assessments against the properties which complainants were to assume.

Defendant in 1918 married Charles Hemhauser, a widower with eleven children. She had one child by a former marriage. She advanced $2,500 to her husband, who went into the plumbing business which seems to have prospered. A number of parcels of land were purchased, the title being taken in the name of Mrs. Hemhauser, the defendant. In 1929 Mr. Hemhauser became ill, and there is testimony that her stepchildren during this period ill-treated her, although this is denied. However, Mrs. Hemhauser was and still is in ill health aggravated by her husband's illness and death. After her husband's decease, the Millburn National Bank instituted suit against defendant on a note for $6,000 made by her and her late husband. She asked the advice of her stepchildren and the family lawyer, and was told she had no defense. No effort was made to raise money to meet the indebtedness. The bank's attorney testified that his client would have been glad to have accepted a mortgage in payment of the judgment.

At the time of the signing of the contract under discussion, complainants made an application to the South Orange Building and Loan Association for a mortgage of $16,000 on one of the properties covered by the agreement. There was due on the mortgage covering this particular parcel about $11,000. Therefore, had the loan been granted, they would have received $5,000, which would have left them a clear profit on this alone in addition to what they might realize on the other land. Under these circumstances Mrs. Hemhauser went to the family lawyer. He did not advise her, as he testified, "one way or the other." He further testified that if the contract were consummated, defendant would

have to go to work. This is a brief summary of the testimony relevant to the decision in this case.

The law has, I think, been settled by the court of errors and appeals in an opinion written by Mr. Justice Parker. *Worth* v. *Watts, 76 N. J. Eq. 299.* On page 304 the learned justice says:

"The question then is, whether in view of the evidence in this case, a court of equity should decree specific performance. The law is well settled. In *Crane* v. *DeCamp, 21 N. J. Eq. 418,* Mr. Justice Scudder, speaking for this court, said: 'This is an application addressed to the sound legal discretion of the court. There is no rule in equity more clearly established, than that upon application for a specific performance of a contract, the court must be satisfied that the claim is fair, reasonable and just, and the contract equal in all its parts. If these points are not established by the complainant he will be left to his remedy at law [citing authorities]. In judging of the fairness of a contract, the court will look not merely at the terms of the agreement itself, but at the relations of the parties and all the surrounding circumstances.' Citing *Fry Spec. Perf.* § *239.* In 1831 Chancellor Vroom said, in *Rodman* v. *Zilley, 1 N. J. Eq. 320, 324:* 'Courts of equity seldom interfere to set aside sales and contracts on the ground of inadequacy of price. They leave the parties to their legal remedies. But when they are called on for extraordinary aid to enforce a contract, they take the liberty to examine into the consideration to be given, its fairness and equality, and all the circumstances connected with it. And if anything manifestly inequitable appears in that part of the transaction, they will never lend their power to carry the contract into execution.' "

Considering, therefore, the inadequacy of the consideration, the surrounding circumstances, and the legal principle that specific performance is within the sound discretion of a court of equity, I shall advise a decree dismissing the bill and counter-claim, and relegating complainants to whatever rights they may have at law. The form of the decree, including counsel fees, will be fixed on proper notice.