175 N.J. Super. 470 (1980)
419 A.2d 1164
JEFFERSON LOAN COMPANY, INC., PLAINTIFF,
v.
GEORGE LIVESAY ET ALS., DEFENDANTS.
Superior Court of New Jersey, District Court Essex County.
September 9, 1980.
*473 Irving & Charles H. Sachs, for plaintiff.
Sally L. Steinberg, Essex Newark Legal Services, for defendant Christopher Marciano.
BISSELL, J.D.C.
This is a suit by plaintiff to collect the balance due, plus interest, on a promissory note. The primary borrowers are in default; the coborrower Christopher Marciano, who was not present at the consummation of the loan, has actively defended the case. He will be referred to hereafter as defendant. As a result of prior motions in the case the first count of the counterclaim and defendant's first separate defense (both based upon the Federal Truth-In-Lending Act-15 U.S.C.A. § 1601 et seq. and Regulation Z thereunder-12 C.F.R. § 226 et seq.) have been dismissed, with prejudice, due to the applicable statute of limitations, 15 U.S.C.A. § 1640(e). Factual allegations in the first separate defense remain viable only as the bases for the second, third and fourth separate defenses which assert that the loan agreement is unconscionable and/or void. See this court's order of September 25, 1979. Also surviving at this point is the second count of the counterclaim asserting liability under N.J.S.A. 17:10-14 for alleged excessive interest charges.
Having obtained answers to demands for admissions, and answers and supplemental answers to interrogatories, plaintiff now moves for summary judgment granting the relief sought in the complaint and dismissing defendant's remaining separate defenses and counterclaim. For the reasons set forth below, that motion is granted.
The following undisputed facts are:
1. The note and statement of disclosure annexed hereto-the documents upon which the action is based-are genuine and bear the signature of defendant Chris Marciano.
2. This defendant is a "co-borrower" of the $2,500 in question, which was loaned by plaintiff.
3. Defendant Marciano made at least one payment against the loan and has made no payments since September 21, 1978, at which time the balance due on the loan was reduced to $2,283.28.

*474 4. The interest rates stated in the note and the annual finance charge stated on the statement of disclosure are the rates permissible under N.J.S.A. 17:10-14 et seq.

Defendant's answers to interrogatories and demands for admissions have reduced the bases for his remaining defenses and counterclaim to the following, as set forth in his supplemental answers to interrogatories:
........
11. Plaintiff's failure to reveal the annual percentage rate and its failure to have the borrower date the insurance authorization, thereby failing to have borrower authorize the insurance, constitutes a lack of meaningful disclosure. Plaintiff should have made meaningful disclosure at the time the transaction was consummated, as required by the statute and its failure to do so renders the transaction unconscionable.
........
14. Because the annual percentage rate is in excess of the amount permitted by law, the contract is void under the New Jersey Small Loan Act. (See N.J.S.A. 17:10-14).
........
19. Because the insurance authorization is undated, and the Truth-In-Lending Act requires the borrower to sign and date the insurance authorization, therefore the Act mandates that the insurance charges be added to the finance charge. Thus, the finance charge is incorrect and should be disclosed as $1,073.47. Defendant Marciano will argue that this computation should be used under the New Jersey Small Loan Act and New Jersey Retail Installment Sales Act.
20. The annual percentage rate is calculated in accordance with the instructions enclosed herewith. With the finance charge of $1,073.47 divided by the amount financed, or $2,500, the quotient equals a figure which is read in conjunction with the attached table.... Thus, the annual percentage rate is incorrect and should have been disclosed as over 24.5%.
........
24. On its face N.J.S.A. 17:10-14 prohibits interest rates in excess of 24%.
The present controversy thus revolves around the "credit life insurance" aspect of the current loan transaction. N.J.S.A. 17B:29-11 and N.J.A.C. 11:2-3.18 both provide in identical language:
When credit life insurance or credit health insurance is required as additional security for any indebtedness, the debtor shall, upon request to creditor, have the option of furnishing the required amount of insurance through existing policies of insurance owned or controlled by him or of procuring and furnishing the required coverage through any insurer authorized to transact an insurance business within this State.
*475 Regulation Z is even more demanding, for it provides at 12 C.F.R. § 226.4(a)(5)(ii):
Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:
........
(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
........
(ii) any customer desiring such insurance coverage gives specifically dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.
The requirements of Regulation Z were not complied with in that the "Insurance Request" on the note is not "specifically dated and separately signed."[1] Rather, a box for insurance coverage was checked with a typewritten [X], without specific date, immediately above the location of the signatures for the note as a whole.
Defendant acknowledges that his counterclaim and defense based upon Regulation Z have been dismissed. He alleges, however, that violations of Regulation Z bear upon and create genuine issues of material fact concerning his remaining defenses and counterclaim. As argued in defendant's brief:
The fact the insurance authorization was not dated by the borrower (as ... Regulation Z ... requires) is one indication that the principal borrower did not have a choice with respect to insurance coverage. The fact that the box next to "yes" has a typewritten "X" in it, rather than a handwritten check or "X", is another indication that the borrower was not afforded this option, as required by N.J.S.A. 17B:29-11.
........

*476 In the case at bar, a genuine issue of material [fact] remains for disposition, namely, whether George Livesay, in fact, authorized credit insurance coverage, and whether he was given the option of furnishing the insurance himself, as required by law. The resolution of the issues of law remaining in the case, namely, whether plaintiff's course of conduct was unconscionable, whether the contract should be declared null and void, whether the contract is enforceable and whether defendant Marciano is liable for the amount claimed, depend, in part, on the court's determination of this genuine issue of material fact.
Of course, this "issue" must be generated by inference. It has not been raised by any affidavit from codefendant Livesay who, defendant states, is now living out of the State and is generally unavailable. See R. 4:46-5(a).
It is against this backdrop that the court must consider the viability of defendant's remaining defenses and counterclaim. The third and fourth separate defenses and the second count of the counterclaim are all predicated upon defendant's position that the loan in this matter is void (or at least voidable) under N.J.S.A. 17:10-14, 14.1 and 15. A brief summary of the provisions of those statutes is in order. Section 14 provides that a lender may lend up to $2,500 at interest rates up to 24% on the first $500, 22% on the next $1,000 and 18% on any remaining balance of principal.[2] Also under § 14 the lender may assess no charges in addition to the interest set forth above, with two exceptions, one of which permits the lender to charge and collect "amounts for insurance obtained or provided by the [lender] in accordance with the provisions of this chapter." N.J.S.A. 17:10-14. Section 14 further provides that if the loan agreement embodies any interest or charges in excess of those expressly permitted, the loan is unenforceable and the borrower may recover any sums paid to the lender. Section 14.1 of the statutes noted above provides, where material here, that:
When the borrower consents thereto in writing, a [lender] may obtain or provide insurance on the life and on the health or disability, or both, of the obligor, but only one obligor irrespective of the number of obligors on such contract . . If a borrower obtains such insurance from or through a [lender], the statement required by Revised Statutes 17:10-15 shall show the amount of the charge therefor .... [N.J.S.A. 17:10-14.1]
*477 N.J.S.A. 17:10-15(a) requires the lender to deliver to the borrower, when the loan is made, a disclosure statement which sets forth, among other things, "the payment schedule, the amount of interest charges, and the annual percentage rate of interest." Ibid.
The essence of defendant's position is that the primary borrower, George Livesay, may not have made an informed election to have plaintiff provide and charge a premium for insurance coverage. If there was no such true "consent," defendant argues, then, under N.J.S.A. 17:10-14, plaintiff is making an illegal charge in excess of the maximum permitted interest rates, thus voiding the transaction and giving defendant the right to collect all sums previously paid. Additionally, defendant argues, this illegal charge alters the actual "annual percentage rate of interest," thus rendering the disclosure statement inaccurate.
As noted previously, since defendant's claims based upon the Federal Truth-In-Lending Act and Regulation Z have been dismissed, the mandate of Regulation Z, that insurance premiums assessed without following the formalities of that Regulation must be incorporated into interest or finance charges, does not apply in the case at bar. There is no such mandate in the comprehensive state law upon which defendant relies. Rather, the alleged violations of state law which, through the interaction of the statutory sections noted above, might arguably support defendant's position, are all predicated upon whether the primary borrower, George Livesay, gave informed consent for the insurance charge levied by plaintiff rather than exercising his alternative under N.J.S.A. 17B:29-11 to use other sources of insurance.
The critical issue on this motion for summary judgment is whether there exists a genuine issue of material fact as to the consent provided by George Livesay. The note in question has a typewritten [X] in the box directing plaintiff to procure insurance. Livesay's signature for the note appears directly below this insurance authorization. Accordingly, on its face there certainly is a consent "in writing" for credit insurance to be *478 obtained by plaintiff. Furthermore, the "Group Credit Life Insurance Cost" of $46.27 is expressly set forth on the annexed statement of disclosure. Defendant has said that the very nature of the execution of the form of consent to insurance (that is, a typewritten [X] rather than a check mark in the hand of the borrower, coupled with the fact that this authorization is undated with no separate signature as required by Regulation Z) could be the source of an inference that Livesay did not give an informed consent or waiver of his rights to obtain insurance coverage elsewhere. This potential inference, defendant argues, is sufficient to create a genuine issue of material fact which will defeat plaintiff's motion for summary judgment.
No affidavit from Livesay has been produced. Defendant has supplied no interrogatory answers from plaintiff concerning the events which actually took place upon the completion and execution of the note. Nor has defendant indicated pursuant to R. 4:46-5(a) that, with additional time, direct evidence of this sort could be obtained. Defendant's counsel candidly admitted at oral argument that Livesay, defendant's son-in-law, has moved out of the State and is genuinely unavailable to defendant.
Taking into account all of the above considerations I conclude that defendant is not asking this court to draw a proper inference to create a genuine issue of material fact. Rather, the court is being asked to speculate as to something which might have happened completely contrary to a clear executed writing. Defendant has not raised a genuine issue of material fact sufficient to defeat plaintiff's motion for summary judgment. See R. 4:46-2; R. 4:46-5(a); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954).
The court must now determine whether plaintiff "is entitled to a judgment ... as a matter of law." R. 4:46-2. As noted previously, defendant's third and fourth separate defenses and the second count of his counterclaim are based upon alleged violations of N.J.S.A. 17:10-14, 14.1, 15 and 17B:29-11. Uninformed consent by George Livesay to the insurance charge is the cornerstone of these defenses and counterclaim. Defendant *479 having failed to raise any "genuine issue" as to that fact, which is established against him by the note and statement of disclosure, those defenses and counterclaim must fall.
As discussed briefly hereafter, defendant's second separate defense (unconscionability) also cannot be sustained.
Here, also, "there is no genuine issue as to any material fact." R. 4:46-2. No viable challenge is mounted to the facts revealed from the note and statement of disclosure. Could a claim of unconscionable conduct be sustained upon such undisputed evidence? This court thinks not.
In recent years unconscionability has most frequently been considered in the context of the sale of goods under the Uniform Commercial Code (U.C.C.). See N.J.S.A. 12A:2-302 and 2-719. However, neither traditionally nor currently is that concept limited to such contracts. See, e.g., Shell Oil Co. v. Marinello, 63 N.J. 402 (1973). Accordingly, this court does not hesitate to draw upon the U.C.C., its comments and New Jersey decisions thereunder, although the transaction herein was not a sale of goods. Accord, Abel Holding Co. v. American Dist. Telegraph Co., 138 N.J. Super. 137, 158 (Law Div. 1975).
"Unconscionability is a matter of law to be determined by the court." Monsanto v. Alden Leeds, 130 N.J. Super. 245, 253 (Law Div. 1974).
Unconscionability is not defined in Section 2-302 of the Uniform Commercial Code.... It is an amorphous concept obviously designed to establish a broad business ethic.... The standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact and observance of fair dealing. [Kugler v. Romain, 58 N.J. 522, 543-44 (1971)]
The doctrine of unconscionability comes into play when two factors coincide: "grossly disproportionate bargaining power" between the parties which has in fact led to "grossly unfair contractual provisions." Shell Oil Co. v. Marinello, supra 63 N.J. at 408. Assuming that, at least for the purpose of opposing a motion for summary judgment, defendant could show that the bargaining positions of plaintiff and the Livesays were grossly disproportionate in the plaintiff's favor, that alone is not "the decisive consideration." Monsanto Co. v. Alden Leeds, Inc., *480 supra, 130 N.J. Super. at 261. "The effect of the unconscionability rule is not designed to upset the terms of a contract resulting from superior bargaining strength, but to prevent oppression and unfair surprise." New Jersey Study Comment to N.J.S.A. 12A:2-302, par. 1. See, also, Uniform Law Commissioners' Comment, par. 1, to that same statute.
Customarily, a court that finds a particular provision of a contract unconscionable will strike it or declare it unenforceable, leaving the balance of the contract standing. In the case at bar the essence of defendant's case, as narrowed by his answers to plaintiff's discovery and expressed in his brief on this motion, is plaintiff's improper inclusion of an insurance charge. If this Court were to find that provision unconscionable, plaintiff would still be entitled to a summary judgment upon the balance it seeks, less the insurance charge of $46.27 plus interest thereon at 24% since February 3, 1978, the date of the loan. However, plaintiff's recovery need not be so limited.
As noted earlier, New Jersey statutes expressly authorize such insurance charges. Defendant has raised no genuine issue of material fact as to the providing of the disclosures and options to the primary borrower which New Jersey law requires. Plaintiff's failure to observe the specified requirements of a small part of federal Regulation Z does not suggest in the present case anything grossly unfair, oppressive or unfairly surprising (even though that lengthy regulation is designed as a whole to guard against such results). Defendant has not suggested that the amount of the insurance charge is excessive. Finally, no provision in the note or statement of disclosure herein even remotely approaches the offensive provisions which our courts found unconscionable in the factual contexts of such leading cases as Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960) (auto manufacturer's disclaimer of implied warranty of merchantability); Kugler v. Romaine, supra (exorbitant price charged for goods practically worthless for their represented purpose); Shell Oil Co. v. Marinello, supra (Shell's "right" to terminate a dealer's franchise upon ten days' notice without cause), and Grossman Furniture Co. v. Pierre, 119 N.J. Super. 411 *481 (D.Ct. 1972) (repossession clause in contract for installment sales of home furniture). Accordingly, no provision in the present note or statement of disclosure need be stricken, nor is plaintiff's enforcement thereof unconscionable.
For the reasons set forth above, plaintiff's motion for summary judgment is granted.
NOTES
[1] Hence the case of Mason v. General Finance Co. of Virginia, 401 F. Supp. 782 (E.D.Va. 1975), cited by plaintiff, is inapposite. That case merely held that a coborrower is not entitled to separate disclosures under Regulation Z where there have been such disclosures to and an executed authorization by the primary borrower in compliance with that regulation.
[2] These are the exact rates appearing on the Note and employed by the plaintiff in the present loan transaction.