795 A.2d 885 (2000)
350 N.J. Super. 403
Lisa GONZALEZ, Plaintiff,
v.
A-1 SELF STORAGE, INC., Defendant.
Superior Court of New Jersey, Law Division, Hudson County.
Decided February 25, 2000.
Plaintiff Lisa Gonzalez, pro se.
Robert Mayerovic, North Bergen, for defendant.
CURRAN, J.S.C.
On May 17, 1999, plaintiff Lisa Gonzalez rented an eight foot by ten foot space for short-term storage of her personal belongings from defendant A-1 Storage, Inc., located at 345 10th Street, Jersey City, New Jersey. Plaintiff and defendant signed defendant's rental Agreement and plaintiff paid defendant $196.90, representing rent of $126 per month, a prorated *886 amount of $60.90, and a $10 charge for the purchase of a lock. Plaintiff's testimony and exhibits listed approximate costs but no receipts for the stored belongings including: two television sets, a VCR, a sofa bed, other furniture, clothing and numerous personal items which were irreplaceable including a video of her child with her deceased grandmother, handmade bedding, clothing, linens and other valuables, some of which had been handed down through two generations of family members.[1] Plaintiff testified as to the damages and moved 39 pictures into evidence which clearly demonstrated substantial water, mildew and rust damage.
On July 3, 1999, plaintiff returned to the storage facility to retrieve the stored items and discovered that all of the possessions had been either destroyed or partially damaged by the entry of water into the storage space from the top of the unit. Plaintiff claims damages of $5,000 including the loss of several items with priceless sentimental value. Plaintiff brought suit asserting defendant was negligent in the maintenance of the storage space, seeking recovery of damages in the amount of $5,000 plus court costs and fees. Defendant stipulated to the water damage and had tried, unsuccessfully, to clean certain items, primarily clothing, without plaintiff's permission. Efforts to remove rust from the TVS and other electronic appliances were also without success. Defendant offered no explanation for the source of the water nor did they argue any circumstances which would mitigate their responsibility other than the provisions of the Agreement. Defendant denied any negligence and asserted that the provisions of the rental agreement completely shielded defendant from liability. The Court finds that defendant was negligent in the maintenance of the storage space and that the contract between the parties does not operate to mitigate defendant's liability in this case.

I. Negligence
The relationship between the parties here may be characterized as a "bailment for hire"; defendant acted as a "bailee" and plaintiff as a "bailor." Black's Law Dictionary defines a bailment for hire as:
A contract in which the bailor agrees to pay an adequate recompense for the safe-keeping of the thing intrusted to the custody of the bailee, and the bailee agrees to keep it and restore it on the request of the bailor, in the same condition substantially as he received it, excepting injury or loss from causes for which he is not responsible.

[Black's Law Dictionary 179 (Rev. 4th ed.1994) ]
N.J.S.A. 12A:7-102 defines a bailee to mean "the person who by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and contracts to deliver them." In Silvestri v. South Orange Storage Corp., 14 N.J.Super. 205, 210, 81 A.2d 502 (App.Div.1951), the court found that a "bailment relation" existed where consumer Silvestri contracted with defendant storage company to store her refrigerator. The court held that a contract provision limiting defendant's liability to $50 was binding on plaintiff Silvestri.
A bailor may sue a bailee in negligence. Lembaga Enterprises, Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J.Super. 501, 727 A.2d 1026 (App.Div.1999)(citing Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co., 1 N.J. 239, 241, 62 A.2d 806 (1949)). The duty of care imposed on a bailee is now codified in N.J.S.A. 12A:7-204 which provides in pertinent part:

*887 (1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.
Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; ... No such limitation is effective with respect to the warehouseman's liability for conversion to his own use.

[N.J.S.A. 12A:7-204]
Once a bailee accepts responsibility for the goods delivered, the bailee has the burden of producing evidence as to the fate of those goods. Charles Bloom & Co. v. Echo Jewelers, 279 N.J.Super. 372, 381, 652 A.2d 1238 (App.Div.1995); see also, Lembaga Enterprises, Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J.Super. 501, 727 A.2d 1026 (App.Div.1999). "To hold otherwise would place an impossible burden on plaintiff." Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co., 189 N.J.Super. 141, 143, 458 A.2d 1341 (Law Div.1983).
In the present case, defendant/bailee accepted a contractual responsibility for the goods delivered to it by plaintiff/bailor. Defendant then failed to provide for "the safe-keeping of the thing intrusted to the custody of the bailee." At trial, plaintiff charged that defendant was negligent in that the top of the storage unit was only a fence-like grate through which substantial water had cascaded to drench the items within the unit. Defendant made no assertions that reasonable efforts were made by it to provide a safe, suitable space for plaintiff's belongings, but stipulated that the damage to plaintiff's belongings was the result of the water damage. Defendant relied on the provisions of the Agreement.
Based on these facts, we find that a bailment was created and that defendant's negligent maintenance of the leased space was the actual and proximate cause of damage to plaintiff's personal property.[2]

II. Contract Provisions
Defendant asserts that it should not be held liable for the damage to plaintiff's property because of the presence of two provisions in its contract, previously referred to as the Agreement between the parties, specifically paragraph 10 ("Nonliability of the owner and insurance obligations of occupant"), and paragraph 11 ("Release of owner's liability"). The two clauses read, in pertinent part, as follows:
10. NON-LIABILITY OF THE OWNER AND INSURANCE OBLIGATIONS OF OCCUPANT. [] Occupant, at occupant's expense, shall maintain a policy of fire and extended coverage insurance with burglary, vandalism and malicious mischief endorsement for at least 100% of actual cash value of such stored property. [] Occupant expressly agrees that the carrier of such insurance shall not be subrogated to any claim of occupant against owner, owner's agents or employees. [] The Owner shall not be liable for personal injury or property damage .... [ ] The Occupant hereby agrees to indemnify and hold the owner *888 harmless from and against any and all claims for damages to property or personal injury, including attorney's fees or costs ....
* * *
11. RELEASE OF OWNER'S LIABILITY. Any and all personal property stored within or on the leased premises by Occupant shall be at Occupant's sole risk and no bailment is created hereunder. Owner shall have no liability for loss or damage to any property of Occupant stored in the space, or otherwise, arising from any cause whatsoever.... Owner shall not be liable to Occupant for any loss or damage that may be occasioned by or through Owner's acts, omissions to act, or negligence, or by acts of negligence of Owner's or other Occupants on the premises.... [ ] The Occupant does hereby waive and release any rights of recovery against Owner that it may have hereunder. [ ] Owner's liability shall not exceed the sum of $50.00 and Occupant's sole remedy at law or in equity shall be the right to recover a sum within such limit.

[A-1 Self Storage contract, paragraphs 10 and 11]
Defendant argues that plaintiff was on notice to obtain insurance and that her failure to do so, coupled with the abundant contractual disclaimers of liability, render the issue of defendant's negligence moot. The issue this court is concerned with, however, is not whether the text of these two paragraphs form a barrier insulating the defendant here from liability. Instead, the issue before the court is whether these paragraphs, together with the rest of the contract, so pervert the ideals of good faith and fair dealing that the contract as a whole is rendered unconscionable. The Court finds that, as a matter of law, they do.
In recent years, unconscionability has frequently been considered in the context of the sale of goods under the Uniform Commercial Code (U.C.C.). See N.J.S.A. 12A:2-302 and 2-719. However, neither historically nor today is that concept limited to such contracts. See e.g., Shell Oil Co. v. Marinello, 63 N.J. 402, 307 A.2d 598 (1973). The principle of denying equitable relief under unconscionable circumstances has long been used by New Jersey courts of equity. See e.g., Hemhauser v. Hemhauser, 110 N.J.Eq. 77, 158 A. 762 (1932); Miller's Administrator v. Miller, 25 N.J.Eq. 354, rev'd, 27 N.J.Eq. 514 (1875); Emmons v. Hinderer, 24 N.J.Eq. 39 (1873). Moreover, some decisions of the law courts before the enactment of the U.C.C.'s section 2-302, though applying other concepts on the surface, may actually represent an invocation of the doctrine of unconscionability. New Jersey Study Comment 2 on N.J.S.A. 12A:2-302 (citing Matlack v. Arend, 2 N.J.Super. 319, 63 A.2d 812 (1949); Kuzmiak v. Brookchester, Inc., 33 N.J.Super. 575, 111 A.2d 425 (1955); S.G. Young Inc. v. B. & C. Distributors, 23 N.J.Super. 15, 92 A.2d 519 (1952)). Accordingly, this court does not hesitate to draw upon the U.C.C., its comments, and relevant New Jersey decisions, even though the transaction herein may not have been a sale of goods in the traditional sense. See also, Abel Holding Co. v. American Dist. Telegraph Co., 138 N.J.Super. 137, 158, 350 A.2d 292 (Law Div. 1975).
Like the concepts of "public policy" or "proximate causation," the doctrine of unconscionability has understandably eluded a stringent definition by statute and case law. In Kugler v. Romain, 58 N.J. 522, 543-44, 279 A.2d 640 (1971), the Court described unconscionability as "an amorphous concept obviously designed to establish a broad business ethic ...." The Court further stated that "the standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact *889 and observance of fair dealing ." Ibid; see also, Jefferson Loan Company, Inc. v. Livesay, 175 N.J.Super. 470, 479, 419 A.2d 1164 (Dist.Ct.1980). The Uniform Commercial Code provides that is up to the court to find as a matter of law that the contract or any clause or any clause of the contract was unconscionable at the time it was made. N.J.S.A. 12A:2-302 (1); Monsanto v. Alden Leeds, 130 N.J.Super. 245, 253, 326 A.2d 90 (Law Div.1974).
The purpose of this statute is to allow the courts to "police explicitly against the contracts or clauses which they find to be unconscionable ... and to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability." U.C.C. Comment 1 on N.J.S.A. 12A:2-302 (1).
The basic test of unconscionability is whether, "in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Ibid. (emphasis added). The principle is one of "prevention of oppression and unfair surprise" (cf. Campbell Soup Co. v. Wentz, 172 F.2d 80 (3d Cir.1948)), and not of disturbance of allocation of risks because of superior bargaining power. U.C.C. Comment 1 on N.J.S.A. 12A:2-302 (1); see also, MacDonald v. Mack Motor Truck Co., 127 Me. 133,142 A. 68 (1928).
In the case at bar, the clauses of defendant's boilerplate contract are so one-sided as to be unconscionable under the circumstances. Paragraph 10 of the contract requires plaintiff to procure insurance coverage while simultaneously depriving any potential insurer of its right to sue defendant even where [read in conjunction with paragraph 11] damage is caused by defendant's own negligence.[3] The clause goes on to require plaintiff to indemnify defendant and pay all of defendant's related attorney's fees and costs.
Paragraph 11 of the contract presumes to declare that there is no "bailment created hereunder" and attempts to circumvent any sort of conceivable liability that could otherwise arise between the parties. Adding insult to injury, the clause then stipulates that defendant's liability "shall not exceed $50 and that plaintiff's only remedy at law or in equity" is the recovery of the $50. As noted supra in section I, the court in Silvestri v. South Orange Storage Corp., 14 N.J.Super. 205, 210, 81 A.2d 502 (App.Div.1951), did hold that a contract provision limiting defendant's liability to $50 was binding on the plaintiff. Even accepting that figure, adjusted for the 540% increase in the inflation index in 49 years, the limit would be approximately $330. Moreover, a precise reading of N.J.S.A. 12A:7-204(2) indicates that the amount of liability is to be set according to a "per article or item, or value per unit of weight" basis. Here, defendant simply created a lump sum limit of liability. It is clear to this court, based on statutory and U.C.C. considerations, that a limited liability sum of $50 is unconscionable.[4]
Additionally, defendant attempts in paragraph 11 to strip plaintiff of any rights of recovery against defendant by stating that "Occupant does hereby waive and release *890 any rights of recovery against Owner."
Paragraphs 23 and 30 of this contract listed below further tip the scales in favor of defendant by requiring plaintiff to defend defendant against any and all related claims brought against defendant and by excluding all warranties that might otherwise offer plaintiff a fair measure of protection against an unsafe storage facility:
23. Occupant agrees to indemnify, hold harmless and defend owner from all claims, demands, actions or causes of action (including attorney's fees) and all costs whatsoever, that are hereafter made or brought as a result of or arising out of occupant's use of the premises ....
* * *
30. Exclusion of Warranties. The IMPLIED WARRANTIES of MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE and all other warranties expressed or implied are EXCLUDED from this transaction and shall not apply to the space and facilities.[5]

[A-1 Self Storage contract, paragraphs 23 and 30]
Lastly, the present scenario does not involve a relationship between two business entities, both experienced in the storage industry and accustomed to dealing with one another. Instead, what we have here is a lone consumer, inexperienced and pressed for time, dealing with an experienced merchant in the merchant's industry. There is no evidence whatsoever that the terms of the contract were ever negotiated. Indeed, quite the opposite is true.
The contract is clearly a boilerplate form, prepared by defendant with pre-printed charges of $15.00 for late payments and $25.00 for returned checks, and with room for modification in only the size, cost, and date of the rental.
In sum, while some of defendant's contract provisions alone may not be objectionable per se, the contract viewed in its entirety, as it must be, is outrageous. The contract attempts to: (1) avoid liability for all of defendant's actions, including defendant's own negligence; (2) require plaintiff to obtain insurance while denying a potential third party insurance company its right to sue defendant; (3) require plaintiff to indemnify and defend defendant against all related claims if defendant is sued; (4) limit all liability of defendant to a sum of only $50; (5) deny the formation and obligations of a bailment; (6) require plaintiff to waive and release any rights of recovery; (7) require plaintiff to pay all attorney's fees and costs associated with any related action; and (8) exclude all warranties, whether express or implied.
The total "one-sidedness" of the terms here, together with the absence of any evidence even remotely suggesting that the parties engaged in a good faith negotiation, requires this Court to find that the standard of "good faith, honesty in fact, and observance of fair dealing" (Romain, 58 N.J. at 543-44, 279 A.2d 640) has not been met and that in order to prevent "oppression and unfair surprise" (U.C.C. Comment 1 on N.J.S.A. 12A:2-302 (1)), the entire contract must be rendered void and unenforceable. Accordingly, judgment is for plaintiff, Lisa Gonzalez, in the amount of $5,000.
ADDENDUM Storage Items With an Estimated Value:

*891
 ADDENDUM
ITEM VALUE
27" Toshiba television $ 250
27" Zenith television $ 250
sofa bed from Jennifer Convertibles $ 600
fitted queen size mattress $ 150
Sharp VCR "Hi Fi" $ 170
Keith Harring with frame $ 200
Picasso print with frame $ 90
abstract print with frame $ 80
American Tourist suitcase (handed down from mother) $ 90
Ashley's baby shoes (handed down to daughter) Price less
St. John's Bay coat with leather collar $ 80
3/4 wool coat (handed from mother) $ 160
video tape of grandparents with child Price-less
GE answering machine $ 50
Raindeer Beanie Baby (no longer available) $ 60
non-stick pots and pans $ 130
goose down pillow from Germany $ 85
goose down pillow case from Germany $ 20
enterntainment holder $ 85
full leather wool coat $ 300
Hugo Boss cashmere scarf $ 240
mom's: hand made quilts, clothes for grandchild,
sheets, pillow cases, shoes, $2,500
shirts
TOTAL: $5,590
 Storage Items Without an Estimated Value:

ITEM
long mirror from Germany small picture frame mirror K. Honig picture frame Picerie Guernice 1937 frame two empty ladies' bags two bags of clothes long wooden shelf baby mattress and stool Lara Harwood picture frame
NOTES
[1] See attached list for a complete inventory of plaintiff's stored belongings.
[2] The Court discusses the legal effect of defendant's contract language denying the existence of a bailment in section II.
[3] Though defendant attempts to disclaim liability for water damage under paragraph 10, it should be noted that no where in the contract is plaintiff required to get insurance to specifically cover damage caused by water.
[4] See N.J.S.A. 12A:2-719(3) stating that consequential damages may be limited or excluded unless the limitation is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
[5] It would appear that this clause comports with the mandate of N.J.S.A. 12A:2-316 which requires that to exclude the implied warranty of merchantability, the contract language must be conspicuous and include the word "merchantability."