

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# Kane v. U Haul Intl Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Kane v. U Haul Intl Inc" (2007). *2007 Decisions.* Paper 1659.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1659

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5002
_____

LAUREN H. KANE;
MARTIN FEIERSTEIN,

Appellants

v.

U-HAUL INTERNATIONAL INC.; U HAUL STORAGE INC;
THREE SAC SELF STORAGE; REPUBLIC WESTERN INSURANCE COMPANY;
GAB ROBINS NORTH AMERICA, INC., CORPORATIONS;
DONALD CESARETTI; VICKI CESARETTI;
JOHN DOE, INDIVIDUALS, REPRESENTING UNKNOWN
MANAGERS OR MANAGEMENT COMPANY;
JOHN DOES 11-20, REPRESENTING UNKNOWN ROOFER, CONTRACTOR
AND/OR REPAIRMAN COMPANY OR INDIVIDUALS;
U-HAUL SOUTHERN NEW JERSEY;
JOHN DOES 21-30, REPRESENTING UNKNOWN OWNER(S)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-06002)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2007

Before:  McKEE, AMBRO and FISHER, *Circuit Judges*.

(Filed:  February 7, 2007)
_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Lauren Kane and Martin Feierstein ("Appellants") appeal the District Court's grant of summary judgment in favor of Republic Western Insurance Co., U-Haul Southern New Jersey (improperly pleaded as U-Haul International Inc. and U-Haul Storage Inc.), Three Sac Self Storage, Donald Cesaretti and Vicki Cesaretti ("Appellees"). For the following reasons, we will affirm.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis.

Appellant Feierstein signed a rental agreement to rent a storage unit at a U-Haul self-storage facility in Pennsauken, New Jersey in November 1997. Appellant Kane signed a similar agreement at the same facility in July 1998. Both agreements provided that the customer agreed not to store more than $15,000 worth of property in a unit, that U-Haul was not a bailee of the customer's property, and that the customer bore the entire risk of loss or damage to property stored, including loss or damage due to U-Haul's negligence. The agreement also offered the customer the choice of electing insurance at an additional fee. Appellant Feierstein elected not to purchase insurance, while Appellant Kane elected to purchase insurance in the amount of $15,000. A portion of the roof at the storage facility began to leak and caused water damage to the Appellants' property. The Appellants discovered the leak and the damage to their property in April 2001. The

2

Appellants were not notified about the leak, and they claim that Appellee Vicki Cesaretti informed Appellant Feierstein that the roof had been leaking for months. U-Haul had been fixing the leak with spot-patching.

Appellant Kane notified Appellee Republic Western and an insurance adjuster met with Appellant Kane and inspected the units. The adjuster did not value the claim at that time. Several months later, Appellant Kane provided the adjuster with an inventory list, and claimed over $120,000 in damages. After that time, the Appellees attempted to inspect and inventory the property in order to value the claim, but the Appellants refused to allow the inspection.[1] The Appellees' adjuster valued Appellant Kane's claim at $3,632.55. The Appellees provided $500 to the Appellants to enable them to remove their property from the storage facility. The Appellants brought suit in December 2001, alleging damages in excess of $75,000 on multiple claims. The Appellees deposited $14,500, which was the remaining amount under the policy, with the District Court. The Appellees also notified the District Court that they stipulated that Appellant Kane's loss was the policy limit. The parties made cross-motions for summary judgment, and the District Court granted summary judgment in favor of the Appellees as to all of the Appellants' claims in two separate orders. The Appellants brought this timely appeal.

---

[1]An inspection did not occur until the District Court ordered one in 2003.

II.

We have jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1291. We review

the District Court's orders granting summary judgment *de novo*. *See Kneipp v. Tedder*,

95 F.3d 1199, 1204 (3d Cir. 1996). We apply the same standard employed by the District

Court, and view the facts in the light most favorable to the Appellants. *See Moore v. City*

*of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006).

A.

The first question on appeal is whether the exculpatory clause is enforceable.

Although the New Jersey Supreme Court has not addressed this question in the context of

self-storage contracts, New Jersey law regarding exculpatory clauses is fairly well-settled.

Exculpatory clauses are disfavored because exempting a party from liability "induces a

want of care." *Kuzmiak v. Brookchester, Inc.*, 111 A.2d 425, 427 (N.J. 1955). However,

exculpatory clauses in private agreements that do not adversely affect the public interest

are generally sustained. *See Abel Holding Co., Inc. v. American Dist. Tel. Co.*, 350 A.2d

292, 297 (N.J. Super. 1975) (citation omitted). Therefore, an exculpatory clause may not

be enforced if a party to the agreement is under a public duty to perform, there is unequal

bargaining power between the parties, or the clause is unconscionable. *See id.* (citations

omitted).[2]

---

[2]Appellants claim that a bailment was created, which would impose a higher duty of care. Appellants' rely on *Gonzalez v. A-1 Self-Storage, Inc.*, 795 A.2d 885 (N.J. Super. 2000), for this proposition. The court in *Gonzalez* determined that a bailment was created in the context of the rental of a self-storage unit based in part on N.J. Stat. Ann.

The Appellants claim that the exculpatory clause in this case is unenforceable because unequal bargaining power existed. Generally, invalidating a contract on this basis occurs when there is a contract of adhesion, and one of the parties has no other choice but to accept or reject the terms of the offer because of the imbalance of power. *See Vasquez v. Glassboro Serv. Ass'n, Inc.*, 415 A.2d 1156, 1165-66 (N.J. 1980). The New Jersey courts have refused to enforce such a clause in the context of residential apartment leases or where an exculpatory clause is hidden in a clause which purports to confer a benefit on the "weaker" party. *See Tessler & Son, Inc., v. Sonitrol Sec. Sys. of N. N.J., Inc.*, 497 A.2d 530, 533 (N.J. Super. 1985) (citations omitted). However, exculpatory clauses in leases for commercial property are regularly upheld because there is no inequality of bargaining power. *Abel*, 350 A.2d at 297.

---

§ 12A:7-102 (2006). Section 12A:7-102 of the New Jersey Statutes Annotated defines a bailee as a person who takes some form of title to goods by which there is acknowledgment of possession. However, the Self-Service Storage Act provides that a self-storage facility is not a warehouse as defined under N.J. Stat. Ann. § 12A:7-102, unless the owner of the storage facility took some form of title to the property stored at the facility. *See* N.J. Stat. Ann. §§ 2A:44-188, 190 (2006). Because the Appellees did not take any form of title to the Appellants' property (i.e., issue a warehouse receipt or a bill of lading), the Appellants' claim that a bailment was created is without merit. Similarly, the Appellants' claim that express or implied warranties under the Uniform Commercial Code, as adopted by New Jersey, existed and were breached is without merit. It is debatable whether this claim was properly raised before the District Court. Regardless, the Self-Service Storage Act makes clear that the Uniform Commercial Code, as adopted by New Jersey, does not apply to self-storage rentals unless a bailment was created. *See* N.J. Stat. Ann. § 2A:44-188 (2006). Because we discern that a bailment was not created, we conclude that no express or implied warranties existed under New Jersey law. Therefore, this claim also fails.

The contract for the storage units clearly was standardized. However, it cannot be said that the Appellants had no opportunity to make any choices. They were provided with the option of purchasing insurance to protect against negligence for an additional fee. The public interest is not affected in light of the fact that the opportunity to elect insurance for an additional reasonable fee existed. *See Abel*, 350 A.2d at 300 (quoting *Tunkl v. Regents of Univ. of Ca.*, 383 P.2d 441, 443 (Ca. 1963)). A contract for self-storage cannot be equated with a residential lease. The prohibition of enforcing exculpatory clauses in residential leases is based on housing shortages, especially affordable housing, the need for which has been recognized by the New Jersey legislature. *See*, *e.g.*, *Kuzmiak*, 111 A.2d at 431. Additionally, the exculpatory clause and offer of insurance were both clear in the contracts signed by the Appellants. A self-storage contract is more akin to a lease for commercial space. Therefore, we agree with the District Court's determination that no unequal bargaining power existed that would make the exculpatory clause unenforceable.

The Appellants also claim that the exculpatory clause is unconscionable. When addressing unconscionability claims in the context of a contract of adhesion, the New Jersey Supreme Court examines the contract as well as (1) its subject matter, (2) the bargaining positions of the parties, (3) "the degree of economic compulsion motivating the 'adhering' party," and (4) the public interest in the enforcement of the contract. *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 97 (N.J. 2006) (citation omitted). In this case, an examination of the factors does not require a finding of

6

unconscionability. The subject matter of the contract is the lease of a self-storage unit. As to the bargaining power of the parties, the Appellants had the choice to purchase insurance. Additionally, as the Appellants concede, there are other self-storage facilities in southern New Jersey. There also does not appear to be any economic compulsion that motivated the Appellants to sign the contracts; indeed, there is no evidence to suggest that a storage unit is a necessity. *See*, *e.g.*, *Rudbart v. N. Jersey Water Supply Comm'n*, 605 A.2d 681, 687 (N.J. 1992). Finally, it is hard to say that the public interest is affected by this contract. Again, as discussed above, the Appellants were allowed to protect themselves against negligence by purchasing insurance. *See*, *e.g.*, *Abel*, 350 A.2d at 300 (quoting *Tunkl*, 383 P.2d at 443). Therefore, we conclude that the exculpatory clause is not unconscionable.

The exculpatory clause is enforceable and therefore we will affirm the District Court's grant of summary judgment in favor of the Appellees as to those claims.

B.

The next issue is whether the Appellees conduct was wanton and willful because such conduct cannot be exculpated. *See Tessler*, 497 A.2d at 533. The New Jersey Supreme Court defined wanton or willful misconduct as follows:

> It must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.

7

*McLaughlin v. Rova Farms, Inc.*, 266 A.2d 284, 305 (N.J. 1970). We hold that the failure

of the Appellees to notify the Appellants of the leak in the roof of the storage facility did

not constitute wanton and willful misconduct. The failure to notify probably constituted

gross negligence, but even viewing the facts in the light most favorable to the Appellants,

we find as a matter of law that this conduct or lack thereof was not wanton and willful.

Therefore, we will affirm the District Court's dismissal of this claim.[3]

## C.

The Appellants also claim that the Appellees violated the New Jersey Consumer

Fraud Act, N.J. Stat. Ann. § 56:8-2 (2006) ("CFA"). The CFA provides in pertinent part

that

> [t]he act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or omission
> of any material fact with intent that others rely upon such concealment,
> suppression or omission, in connection with the sale or advertisement of
> any merchandise or real estate, or with the subsequent performance of such
> person as aforesaid, whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an unlawful practice.

*Id.* Appellants allege that the Appellees' failure to notify them about the leaks constituted

unconscionable commercial practices as defined by the CFA. The New Jersey Supreme

Court has explained that "the standard of conduct contemplated by the unconscionability

---

[3]This also resolves the Appellants' claim for punitive damages. In order to be entitled to recover punitive damages, the Appellants must prove that the Appellees' conduct was more than negligence or gross negligence. *See* N.J. Stat. Ann. § 2A:15-5.12 (2006). Because the record does not demonstrate evidence of more than some degree of negligence, we will affirm the District Court's grant of summary judgment on this claim.

clause is good faith, honesty in fact and observance of fair dealing." *Kugler v. Romain*,

279 A.2d 640, 652 (N.J. 1971). As discussed above, we agree with the District Court's

conclusion that the exculpatory clause is not unconscionable. Similarly, the failure to

notify the Appellants of the leak does not constitute an unconscionable commercial

practice. Although we do not condone the Appellees conduct in this case, it does not rise

to the level of what the New Jersey courts have found to constitute unconscionable

commercial practices under the CFA. *See*, *e.g.*, *Kugler*, 279 A.2d at 652-54; *49 Prospect*

*St. Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1142 (N.J. Super. 1988).

Therefore, we will affirm the District Court's grant of summary judgment on this claim.

D.

The Appellants next claim that Appellee Republic Western engaged in bad faith

adjustment of the insurance claim.[4] New Jersey law recognizes such a claim. *See Pickett*

*v. Lloyd's*, 621 A.2d 445, 450-51 (N.J. 1993). In *Pickett*, the New Jersey Supreme Court

explained that a settlement offer by an insurer must be made in good faith, and be honest

and intelligent in light of the insurer's experience. *Id.* at 450. The court adopted an

approach taken by the Rhode Island Supreme Court, which held that if a claim is fairly

debatable, then no liability arises. *Id.* at 453 (citation omitted). We agree with the

---

[4]The Appellants also assert on appeal that Appellee Republic Western violated various provisions of the New Jersey Administrative Code regulating insurance practices. *See*, *e.g.*, N.J. Admin. Code § 11.2-17 (2006). However, these claims were not raised before the District Court, nor included in the Third Amended Complaint, and therefore the Appellants have waived such claims.

9

District Court that the claim was fairly debatable in this case. Appellant Kane claimed that her property damage was approximately $120,000. The Appellants then refused to allow further inspection of their property for a significant period of time. When Republic Western eventually was able to inspect and value the property, its adjuster (an expert) determined that the amount of the loss was only $3,632.55. In light of the significant difference between these two valuations, and the fact that Republic Western could not attempt to settle until it was provided access to the property, it is easy to say that the claim was fairly debatable. Therefore, we will affirm the District Court's grant of summary judgment as to this claim.

E.

The final claim that the Appellants raise in this appeal is that the District Court erred by dismissing Appellant Kane's claim for breach of contract against Appellee Republic Western. The Appellants claim that the District Court's conclusion that the claim is moot - because Republic Western offered the policy limit of $15,000 (minus $500 previously paid) and Appellant Kane agreed that she was only entitled to that amount - was incorrect because Appellant Kane may be entitled to prejudgment interest. We agree with the District Court that this remaining claim is moot because the Appellant Kane was offered the full amount that she could recover. *See Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). As there was no judgment in this case, Appellant Kane cannot recover prejudgment interest. *See Wilts v. Eighner*, 402 A.2d 269, 271 (N.J. Super. 1978). Therefore, we will affirm.

10

III.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment as to all of the Appellants' claims in favor of the Appellees.